**Raymond F. BURRIS, Roberta M. Burris, and Marl Pit Farm, Inc., a Delaware Corporation, Plaintiffs,**

**v.**

**William A. CROSS, Defendant.**

Superior Court of Delaware, New Castle County.

Submitted: July 23, 1990.
Decided: Sept. 27, 1990.

**1368**

Robert C. O'Hara, and Lynne M. Parker, of Bayard, Handelman & Murdoch, P.A., Wilmington, for plaintiffs.

Wendie C. Stabler, of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for defendant.

## OPINION

BARRON, Judge.

This case comes before the Court as a declaratory judgment action brought pursuant to 10 *Del.C.*, ch. 65. Under instant consideration is the defendant's Motion To Dismiss, Or In The Alternative, To Transfer Or Stay, on the basis that this Court does not have complete subject matter jurisdiction. In addition, the defendant argues that even if subject matter jurisdiction is present in this Court, the jurisdiction should be declined (at least as to Count III of the Complaint), due to a lack of necessary parties, as well as an assertion that the controversy lacks ripeness. Defendant further argues that the Court of Chancery would provide a more adequate, suitable and superior arena for the adjudication of the merits of this case. Due to the failure of this action to satisfy the threshold requirements of the Declaratory Judgment Act, 10 *Del.C.*, § 6501, *et seq.*, and, alternatively, due to a lack of subject matter jurisdiction, I agree; the motion is granted for the reasons stated hereinafter.

## STATEMENT OF RELEVANT FACTS

This action and a companion action filed in the Court of Chancery arise out of a controversy involving the scope and use of an easement or right-of-way which arose by implication and/or necessity.

Defendant William Cross (Cross) is the resident fee simple owner of a parcel of land, approximately 110 acres, situate on Marl Pit Road in New Castle County, State of Delaware.

The Burris' are the predecessors in title to Marl Pit Farms (Marl Pit) with respect to an approximately 270 acre parcel of land situate adjacent to the Cross property (the Burris property). Marl Pit is the present record owner of the Burris property upon which is situated the Burris Borrow Pit.

The Burris' have lived on the Burris property for approximately 34 years, have owned the land for at least 23 of those years, and have operated a borrow pit on their property since at least 1954. The borrow pit itself has apparently been in operation for many years prior to 1954 and was operated by the Burris' predecessor in title. The borrow pit is presently being operated by Contractors Sand and Gravel Co. ("Contractors"), a Delaware Corporation, under a contractual agreement entered into with Marl Pit.

The right-of-way in question arose by implication and/or necessity in order to provide a means of ingress and egress to the Burris property to and from a public road known as Marl Pit Road (County Road 429). This right-of-way travels over a portion of the Cross property and was in existence at the time Cross acquired the property in 1957. In the years prior to 1954, the right-of-way was used by the Burris' predecessor in title in order to serve their dairy farm and the limited operations of the borrow pit. The defendant alleges that until the present expansion complained of, the right-of-way consisted of a gravel road approximately 10 feet in width and 1,000 feet in length; the use of the right-of-way apparently fluctuated according to the needs of the dairy farm and the fairly low level of operations of the borrow pit.

Although the right-of-way was clearly and admittedly in existence at the time Cross acquired his property in 1957, neither the Cross deed nor the Burris deed contains an express grant or reservation of easement.

In 1987, Contractors, on behalf of the Burris', made application to New Castle County for a license to maintain an extractive use operation (a borrow pit), legally in existence prior to the date of the adoption of New Castle County Ordinance 83–103. This application was denied and then appealed to the New Castle County Board of Adjustment for review. On November 18, 1987 a hearing was held before the Board. Cross at that time testified on behalf of the Burris operation and stated that to his personal knowledge, the borrow pit had been in continuous operation on the Burris property since 1957. He also stated that, in fact, the borrow pit operation was expanding.

On December 18, 1987, the Board held that the operation of the borrow pit on the Burris property was a legally non-conforming use since it had been in use prior to September 17, 1954. And, as a result, on March 10, 1988, New Castle County issued a license for the operation of the borrow pit. Paragraph 2B of the license application, which became a term and condition of the license, provides:

> The average number of trucks is 10 to 15 daily, with a low of 2 to 3 daily and a high of 16 to 40 daily. Since the site location is far from the market place, the trucks can only make four to six trips per day, per truck.

On May 13, 1988, New Castle County advised the Burris' that their license was suspended because of violations of the license by taking more than 40 truckloads per day from the borrow pit. However, on June 24, 1988, the Board of License Inspection and Review in and for New Castle County held that the Burris license permitted a maximum of 240 truckloads to be removed from the borrow pit per day. Operations resumed and defendant alleges that they continue to the present time with approximately 90 truckloads per day using a right-of-way of approximately 30 feet in width.

On April 5, 1990, counsel for Cross notified counsel for the Burris' and Marl Pit (plaintiffs in this action) and Contractors (a non-party in this action) that their use of the right-of-way and its expansion thereof was in violation of Cross' property rights and requested plaintiffs and Contractors to voluntarily restrict the use of the right-of-way. This letter further stated that if this voluntary restriction was not carried out, Cross intended to file suit in the Court of Chancery.

For approximately two months the parties tried to resolve the matter and, in the context of good faith settlement negotiations, Cross' attorney provided plaintiffs' attorney with a draft Chancery Court complaint which Cross intended to file if negotiations were not successful. In the early part of June, it became clear that the negotiations were not going well and that litigation would likely result. It is not clear whether both sides considered the negotiation efforts to have utterly failed at this point; this fact is in dispute. However, on Friday, June 8, 1990, knowing that Cross intended to file suit in the County of Chancery in the event of failure to reach an agreement, plaintiffs filed this suit in Superior Court seeking declaratory judgment and damages.

On Tuesday, June 12, 1990, Cross filed a similar suit against the Burris', Marl Pit and Contractors in Delaware's Court of Chancery. This complaint alleged that the intensified use of the original right-of-way constituted an illegal and continuing trespass in violation of Cross' property rights.

Upon receipt of the Chancery Court complaint, counsel for Burris communicated to counsel for Cross that a similar action was filed previously in the Superior Court. Burris at this point requested Cross to voluntarily dismiss the Chancery Court action.

In a letter dated June 20, 1990, accompanied by Requests for Interrogatories and Requests for Production of Documents with regard to the Chancery Court action, counsel for defendant informed counsel for

plaintiffs that defendant would not dismiss the Chancery Court action. As a result, on June 29, 1990, the plaintiffs filed in Chancery a Motion To Stay the Chancery Court proceeding in favor of the Superior Court action.

Following receipt of the above-mentioned motion, on July 2, 1990, defendant filed in Superior Court a Motion To Dismiss Or Alternatively, To Transfer Or Stay this action. It is this motion which is presently before the Court.

In his Superior Court Complaint, Burris seeks 1) a judgment declaring that the right-of-way may be used to the full extent necessary for expanded operation of the borrow pit, 2) an Order estopping Cross from asserting that the use of the right-of-way is restricted to any lesser number of truckloads per day than the extractive use license would permit, and 3) the determination of Cross' liability, and an award of compensatory damages, for any injury suffered by Burris due to past and/or present loss of business, business opportunity and good will as well as intervention to restrain any threatened future tortious interference with the same interests.

Cross argues in his Motion that this Court lacks complete subject matter jurisdiction over a matter which properly lies in the Court of Chancery. That is, as Burris is seeking primarily equitable relief, this cause should have been raised in Chancery rather than in this Court which clearly lacks the power to grant such relief. Moreover, Cross argues that Count III of the Complaint is further defective due to failure to join an interested party, Contractors, as any damages resulting from Cross' threatened suit have been and/or will, in reality, be suffered by Contractors, not Burris. Cross also argues that Count III does not present a situation where the claim is ripe for judicial determination.

In answer, Burris states that although the prayers in the Complaint are couched in equitable terms, what is really sought is a determination of the extent and scope of

Burris' right-of-way and that the form of relief prayed for is not controlling in the determination of subject matter jurisdiction by the Court.

Burris also argues that Count III presents a claim of actual, existing and continuing damages and, thus, is ripe for determination. As to the issue of Contractors being an indispensable party, Burris appears to make no specific argument other than a claim that the damages are, in fact, occurring to Burris.

## THE ISSUES

To this Court's mind, there are two separate determinative issues here: 1) Whether declaratory judgment is the most appropriate, efficient and economical use of judicial resources as a means to bring this controversy to a conclusion and 2) even if appropriate, whether this Court has subject matter jurisdiction?

## DISCUSSION

### A. Declaratory Judgment

As noted by Chancellor Allen in *Schick Inc. v. ACTWU*, Del.Ch., 533 A.2d 1235, 1237 (1987), the declaratory judgment action is a comparatively recent innovation in Anglo–American law.[1] In *Hampson v. State*, Del.Supr., 233 A.2d 155 (1967), the Delaware Supreme Court stated that the purpose of the original Delaware Declaratory Judgment Act, 46 *Del.Laws*, c. 269, was to provide:

> ... a remedy where no other remedy is available under circumstances where an impending injury has not as yet occurred. The principal purpose ... is to provide preventative justice. *Stabler v. Ramsay*, 32 Del.Ch. 547, 88 A.2d 546.

*Id.*, 233 A.2d at 156; *see also Mason v. Bd. of Pension Trustees*, Del.Super., 468 A.2d 298 (1983) (finding this purpose still present under the amended Act).

In the words of Justice Tunnell, it permitted "the courts ... to seize time by the

---

1. For a concise discussion of the developmental history of declaratory judgment, *see Schick*, Del.

Ch., 533 A.2d at 1237, fn. 1.

forelock," *Stabler, supra,* 88 A.2d at 550, and enabled them "to adjudicate a controversy prior to the time when a remedy is traditionally available and, thus, to advance [the] stage at which a matter is traditionally justiciable." *Diebold Computer Leasing, Inc. v. Commercial Credit Corp.,* Del. Supr., 267 A.2d 586, 591–92 (1970); *see also, Stabler, supra* at 549–550.

In 1981, Delaware amended the Act by adopting the Uniform Declaratory Judgment Act.[2] "The purpose served by adopting the Uniform Act was not to change any particular result under the earlier statute but rather to make available to Delaware courts and litigants the massive body of law decided under the Act." *Schick, supra* at 1238. Furthermore, its purpose was expanded and liberalized in application:

> This chapter is declared to be remedial; its purpose is to settle and to afford relief from uncertainty with respect to rights, status and other legal relations; and is to be liberally construed and administered. 10 *Del.C.,* § 6512.

*Accord: Heathergreen Commons Condo. Ass'n. v. Paul,* Del.Ch., 503 A.2d 636, 641–642 (1985).

■ In *Heathergreen, supra,* Vice Chancellor Jacobs raised the question as to whether the threshold requirements of actual controversy needed to bring an action under the predecessor Act were still applicable to actions under the Uniform Act. *Id.* at 641, fn. 9. Chancellor Allen answered this question in *Schick, supra* where the Court held that the requirements approved by the Delaware Supreme Court in *Rollins International Inc. v. International Hydronics Corp.,* Del.Supr., 303 A.2d 660

(1973) are still applicable and relevant under the Uniform Act.

We approve the prerequisites of an 'actual controversy' spelled out in *Marshall v. Hill,* 8 Terry 478, 481, 93 A.2d 524, 525 (Del.Super., 1952): (1) It must be a controversy involving the rights or other legal relations of the party seeking declaratory relief; (2) it must be a controversy in which the claim of right or other legal interest is asserted against one who has an interest in contesting a claim; (3) the controversy must be between parties whose interests are real and adverse; (4) the issue involved in the controversy must be ripe for judicial determination.

*Schick, supra* at 1238.

Therefore, for an action to be cognizable under the Act, these threshold requirements must be met.

On the facts of this case, it is clear that the first two prongs of the *Marshall v. Hill* test of declaratory judgment jurisdiction are met here, and indeed are not controverted by the movant. The Court, therefore, moves to the last two elements which are raised as issues by the defendant.

■ The third *Marshall v. Hill* element requires that real and adverse parties be present. Although the defendant alleges that the truly adverse party, Contractors, is not present as required by 10 *Del.C.,* § 6511,[3] the Court has the power to correct this alleged deficiency if necessary.[4] Because of the power to cure this possible procedural defect, the Court determines that this issue is *de minimus* for purposes of this opinion.

---

**2.** All post–1981 Delaware cases and all authorities from other state jurisdictions cited in this opinion have been decided under the Uniform Act. Federal decisions are under the Federal Act, 28 U.S.C. § 2201, which has been similarly construed.

**3.** 10 *Del.C.,* § 6511 reads as follows:
"When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding.

In any proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party, and shall be entitled to be heard, and if the statute, ordinance or franchise is alleged unconstitutional, the Attorney General of the State shall also be served with a copy of the proceeding and be entitled to be heard."

**4.** The Court could allow the complaint to be amended under Superior Court Civil Rule 15(a) or, alternatively, order joinder under Superior Court Civil Rule 19(a).

■ Lastly, the issue must be ripe for adjudication.[5] Ripeness in such an action does not require that a claim must already have matured to the point where coercive relief is required by the plaintiff, but merely that the situation is one of high probability that such relief could be and/or would be sought, upon maturation of the claim, *absent* a declaration of rights. *See Schick, supra* at 1239; *accord, Heathergreen, supra* at 639; *Clemente v. Greyhound Corp.*, Del.Super., 155 A.2d 316, 321–322 (1959). Considered in this light, the present action appears to be ripe for determination. In fact, it seems "overripe."

■ It is this aspect of overripeness,[6] considered in light of limited judicial resources that troubles the Court. "In the typical declaratory judgment action, *see e.g., Heathergreen Commons Condominium Assoc. v. Paul, supra*, an *unwilling litigant* will have cast a cloud upon a property right (or other legal interest) of the declaratory plaintiff, *but will not have moved forward to litigate the claim.*" (Emphasis added.) *Schick, supra* at 1239. The case at hand presents a very atypical situation when compared to the normal case, and, thus, it is felt that a more intense scrutiny of the facts and circumstances surrounding the controversy and the judicial procedure being used to bring it to an end is warranted. *cf. Air Products and Chemicals, Inc. v. Lummus Co.*, Del. Ch., 252 A.2d 545, 547 (1968), *rev'd on other grounds*, Del.Supr., 252 A.2d 543 (1969).

■ The Court must balance its interest in conserving resources and avoiding hypothetical questions against the declarant's interest in resolving the immediate question and avoiding any further hardship which would be caused by delay. This balancing must be carried out in light of the remedial purpose of the Act.

■ The decision to entertain an action for declaratory judgment is discretionary with a trial court, *Mullendore v. Sch. D. No. 1 of Lancaster Cty*, 223 Neb. 28, 388 N.W.2d 93, 98 (1986); *National Health Fed. v. Weinberger*, 518 F.2d 711 (7th Cir. 1975); *cf. Stabler, supra* at 550, the only limitation being that the Court cannot abuse its discretion. *Clemente v. Greyhound Corp., supra* at 321.

■ "*Born out of practical concerns*, the availability of [declaratory judgment] in any particular case involves the exercise of judicial discretion which should turn importantly upon a *practical evaluation of the circumstances present.*" (Emphasis added.) *Schick, supra* at 1238. This discretion should be liberally exercised in order to advance the remedial purpose of the Act. *See* 10 *Del.C.*, § 6512. Although "Contemporary courts [are] understandabl[y] reluctant to deprive a plaintiff of access to a forum where he can best advance his case," *Air Products, supra* at 547, if the plaintiff cannot show good reason why the conventional action pending in Chancery should be avoided in favor of this declaratory judgment action, then in my opinion use of this type of action may be inappropriate and, in the sound discretion of the Court, jurisdiction may be declined.

■ In considering the appropriateness of a declaratory judgment action under the facts and circumstances of this case, I believe that I should consider the following factors:

1. Whether the defendant is truly an unwilling litigant, thus necessitating declaratory action.

2. What form of relief is truly being sought by the plaintiff and whether that relief, if not solely a declaration of rights, would require resort to another court for supplemental relief. If so, whether both the rights and relief could be attained in a

**5.** For an excellent and thorough discussion of the present view of ripeness as applied in declaratory judgment actions, see Chancellor Allen's discourse in *Schick, supra* at 1238–1242.

**6.** In my opinion, "overripeness" is merely another aspect of the total concept of ripeness. Just as the Court has the discretion to dismiss an

action if not ripe for determination, so may a Court dismiss an action if a practical evaluation of the peculiar facts and circumstances of the case lead the Court to believe that events have proceeded past the point where declaratory action will serve a practical and useful purpose.

single non-declaratory action already available.

3. Whether another remedy exists and whether it would be more effective or efficient and, thus, whether declaratory judgment would serve a useful purpose.

4. Whether another action is pending, instituted either before or after the instant action, at the time of consideration of the Motion to Dismiss, and whether plaintiff would be able to raise all claims and defenses available in the instant action, as part of the pending action.

5. Whether the instant action has truly been instituted to seek a declaration of rights or merely for tactical or other procedural advantage.

6. Whether the instant action was filed in apparent anticipation of other pending proceedings.

7. Whether plaintiff will suffer any prejudice if the instant action is dismissed.

■ With regard to the aforementioned factors, the Court finds as follows:

1. Factually, the Court is presented here with a situation where the defendant was very willing to litigate if necessary. This willingness, and indeed actual intent to bring an action in Chancery if negotiations were not successful, was made clear to the plaintiff right from the first contact between the attorneys involved in this matter. Even while negotiations were ongoing, the defendant prepared a complaint for filing in Chancery, presented plaintiff with a copy of this draft complaint during negotiations and, in fact, did file in Chancery, apparently without knowledge of the present action, only four days after this action was filed (two days after if excluding Saturday and Sunday), and within a short period after negotiations had apparently stalled. As plaintiffs' counsel stated in his brief, "In almost every subsequent (to the initial) written communication thereafter, counsel for Defendant threatened the institution of a lawsuit to resolve the controversy." (Plaintiff's Brief, at 1). This is hardly the picture of "an unwilling litigant" who would not move forward to litigate a claim. The defendant has, in fact,

*already moved forward* to litigate and, to my mind, in a forum which can provide a more efficient and complete remedy.

■ 2. It is true, as argued by the plaintiff, that the form of the prayer for relief does not control the area of subject matter jurisdiction in equity, citing *City of Wilmington v. Delaware Coach Co.*, Del. Ch., 230 A.2d 762 (1967) as authority; that "the Court must consider what the complaint really seeks." *Jefferson Chemical v. Mobay Chemical Co.*, Del.Ch., 253 A.2d 512, 515 (1969). However, in *Jefferson,* Chancellor Duffy (who also wrote the earlier opinion in *Delaware Coach* ) distinguished *Delaware Coach* as an instance where "injunctive relief was present only as a mere possibility incident to the declaration of rights." *Id.* at 515. This distinction is applicable to the case at hand. Injunctive relief in the case *sub judice* is *not* merely incidental to the declaration of rights sought here.

■ Although the declaration of rights as to use of the right-of-way is the primary issue here, two of the three counts of the complaint clearly either seek or will require future injunctive relief. Count II requests from this Court "[A]n *Order:* Estopping the defendant from asserting that the use of the right-of-way is restricted to any lesser number of truckloads. ...." While it is true that estoppel is an available defense in this Court, the Court deals with it as an evidentiary issue. When estoppel is successfully raised, the Court rules that certain evidence and/or claims are not legally available to a party. It is an evidentiary ruling, not an order. It appears to the Court, that if it were to enter an order on the issue, the practical result would be the same as injunctive relief preventing the defendant from raising any claim at all in any Court. This type of order would violate the separation of law and equity which is historically established in Delaware and would, in the Court's view, be an impermissible expansion of this Court's power and jurisdiction.

Furthermore, although Count III presents a claim for present damages, the

heart of it alleges future harm. The prayer requests damages for the present harm and any further relief available. Yet what appears to be the main thrust of the Count is the prevention of future harm, a result truly available only in equity. This impression is further reinforced by the Certificate of Non–Arbitration filed by the plaintiff stating that the matter involves claims that are substantially non-monetary. The obvious conclusion is that present damages are negligible when compared to the alleged possible future injury. It should be noted here that, as discussed *infra*, all relief, remedies and rights sought in this action would be available in the Court of Chancery action.

◼ 3. An action to quiet title to an easement arising by implication and/or necessity, not mentioned in any deed of record and requiring the production of evidence extrinsic to the record deeds would clearly be available to the plaintiff in the Court of Chancery. As stated by the Delaware Supreme Court in *Wilkes v. State,* Del.Supr., 265 A.2d 421 (1970):

> "It is clear from the *Murphy* and *Suplee v. Eckert,* 120 A.2d 718 (Del.Ch. 1956) opinions and the authority quoted therein that if an alleged cloud involved disputes which can be resolved only by extrinsic evidence lying outside the record, or if the invalidity of a recorded instrument must be established by matters outside of the record, then equity has jurisdiction to try the cause.
>
> We affirm *Suplee* and *Murphy* as containing time-honored rules of property law."

*Id.* at 424.

It is also settled law in Delaware that "when equity obtains jurisdiction over some portion of a controversy, it will go on to decide the whole controversy and give complete and final relief." *Wilmington Trust Co. v. Barry,* Del.Super., 397 A.2d 135 (1979).

> "While a court of equity has no jurisdiction to entertain a suit brought purely for compensatory damages, those being awarded at law, it may nevertheless award compensatory damages as a part

of the final relief in a cause over which it admittedly has jurisdiction." *Tull v. Terek,* Del.Supr., 147 A.2d 658 (1958); *accord: Anzilotti v. Andrews Construction Co.,* Del.Ch., 115 A.2d 493 (1955).

*Id.* at 138.

◼ It is therefore clear that another remedy is available. "The availability of [another remedy] is a factor bearing upon a trial court's discretionary decision on whether to entertain an action for declaratory judgment." *Mullendore, supra* 388 N.W.2d at 98. The question is whether that remedy is a better choice in terms of the plaintiffs' claims and in the interest of judicial economy. As noted by Judge Stiftel in *Clemente,* "[t]he real test is whether or not the other remedy is more effective or efficient and thus whether the declaratory judgment action would serve a useful purpose." *Clemente, supra* at 321 (quoting 6 Moore's Fed.Prac., Par. 57.08(3), pp. 3031, 3032). Stated otherwise, would an action in Chancery provide all the advantages of an action in Superior Court, and more?

It is clear that one action in Chancery could resolve all the issues, formulate the proper equitable and legal remedies and enforce those remedies if necessary. This Court could not do so. In this particular case, the Court of Chancery would provide a more efficient remedy.

4. There is another action pending at this time in the Court of Chancery, albeit filed four days following the filing of this Superior Court action. It appears that the plaintiff in the instant case could raise all his claims and defenses in that action: the scope of the easement would necessarily have to be determined, the defense of equitable estoppel would clearly be available to him in Chancery, and his claim for compensatory damages could be considered. In fact, it seems to the Court that the plaintiffs' entire complaint in the instant action would be available to him as a compulsory counter-claim to the defendant's Chancery action. *See* Chancery Court Rule

13(a).[7]

■ 5. Employment of the declaratory judgment procedure solely to achieve tactical advantage should not be endorsed, *Schick, supra* at 1242, nor should it be used for the purposes of harassment or delay, *cf. General Foods Corp. v. Cryo-Maid, Inc.,* Del.Supr., 198 A.2d 681, 684, 685 (1964) (possible "jockeying" for position and intent to harass opposing party considered as factor in favor of granting motion to stay Delaware action and refusal to enjoin action by opposing party in other jurisdiction); *accord, Air Products, supra* at 547. The timing of the filing of the instant case, considered in the context of prior negotiations and the openly expressed intent of the defendant to file in Chancery does at least arguably raise a hint of the "jockeying" addressed in *Cryo-Maid* and *Air Products,* which here has resulted in "the horrors of simultaneous adjudication." *Barry, supra* at 137.

6. The case of *Ven-Fuel, Inc. v. Dept. of Treasury,* 673 F.2d 1194 (11th Cir.1982), which was decided under the Federal Act, is directly on point. There, the plaintiff was advised by the Treasury Department that if a certain assessed penalty was not paid, the Government would institute legal proceedings to collect it. The next day, in apparent anticipation of the filing by the Government, the plaintiff filed a declaratory judgment action in the District Court for the Southern District of Florida. One week later, the Government filed suit in the District Court for the District of Massachusetts. The Florida Court dismissed the Florida action. The United States Court of Appeals for the Eleventh Circuit affirmed the dismissal. Judge Anderson stated in his opinion that:

> In its discretion, a district court may decline to entertain a declaratory judgment action on the merits when a pending proceeding in another court will fully resolve the controversy between the parties. (Citations omitted.) One equitable consideration in such decision is *whether the declaratory judgment action was filed in apparent anticipation of the other pending proceeding.* (Citations omitted.) (Emphasis added.)

*Id.* at 1195; *accord, Consol. Rail Corp. v. Grand Trunk Western R. Co.,* 592 F.Supp. 562, 568 (E.D.Pa 1984); *cf. E.E.O.C. v. Univ. of Pa.,* 850 F.2d 969 (3rd Cir.1988).

The Court further noted that the plaintiff had not argued that it would not be able to raise its defense of collateral estoppel (the subject of the declaratory action) in the other proceedings. *Ven-Fuel,* 673 F.2d at 1195.

In the instant case, the defendant clearly expressed his intention to file suit in Chancery if negotiations failed. Plaintiff, well aware of the extent and nature of the defendant's equity action[8] and apparently without notifying the defendant, filed the instant action as soon as negotiations either failed or appeared to be about to fail.

7. In light of the conclusions expressed above, the Court finally looks to whether the plaintiff will suffer *any* prejudice by dismissing this action.

After carefully examining the facts and circumstances surrounding this case, the Court can find no prejudice to the plaintiff if the action is dismissed. He loses no obvious procedural advantages in that he has waived arbitration and did not request a trial by jury; furthermore, all his claims and defenses are cognizable in Chancery and can be raised in the action pending there.

"Normally, dismissal is regarded as a harsh penalty, and courts are reluctant to deprive litigants of a forum." *Barry, su-*

---

7. Chancery Court Rule 13(a) reads as follows: "(a) **Compulsory Counterclaims.** A pleading shall state as a counterclaim any claim, which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the Court cannot acquire jurisdiction, except that such a claim need not be so stated if at the time the action was commenced the claim was the subject of another pending action."

8. Plaintiff's counsel, in fact, had in his possession a draft of defendant's proposed Court of Chancery complaint before filing in this Court.

*pra* at 139. However, under the facts and circumstances of the instant case, the plaintiff is not deprived of any substantive rights by dismissal. Indeed, "due to the power of Chancery to grant broad relief in the matter, it is difficult to see how plaintiff is prejudiced at all." *Barry, supra* at 139.

▮▮▮ Although the mere existence of another adequate remedy does not require dismissal, it can constitute sufficient grounds for dismissal in the Court's discretion. *Gagne v. Village of LaGrange,* 36 Ill.App.3d. 864, 345 N.E.2d 108, 111 (1976). "Thus, a trial court may, at its discretion, refuse to entertain an action for declaratory judgment where another 'equally serviceable remedy' has been provided...." *Mullendore, supra* 388 N.W.2d at 98.

In the case at hand, an action in Chancery appears to be not only "equally serviceable", but indeed superior to the remedy available in this Court. The better course of action, in such a case, would seem to be the placement of "the entire case in the lap of Chancery." *Barry, supra* at 137.

Therefore, I conclude that both the factors discussed above and considerations of judicial economy militate against further involvement of this Court. The present action is inappropriate for declaratory judgment and should be dismissed.

### B. *Subject Matter Jurisdiction*

▮▮▮ Even if an action may be justiciable and appropriate under the *Marshall v. Hill* test, subject matter jurisdiction must be established for this Court to entertain the claim.

The defendant argues that plaintiff is primarily seeking equitable relief, not just a declaration of rights as to the scope and extent of his right-of-way, but, more importantly, an enforcement of that right.

Based on that assertion and the fact that Chancery, under the equitable "clean-up" doctrine, has concurrent jurisdiction over both the legal and equitable remedies sought in this case, defendant argues that jurisdiction over this matter lies in equity, not at law.

In reply, plaintiff argues that the inherent equitable nature of a declaratory judgment action does not in itself establish equity jurisdiction. Plaintiff then argues that equitable jurisdiction is not established merely because the prayers of the claim are couched in equitable terms, that the Act specifies that any form of further relief is available after the rights have been declared and may be sought in another court if jurisdictionally necessary. 10 *Del.C.,* § 6508. The form that the prayer takes is not controlling as to jurisdiction; therefore, this Court has subject matter jurisdiction.

Both sides have presented the Court with excellent arguments replete with persuasive authorities as to whether the Court of Chancery should or should not have jurisdiction.[9] To this Court's mind, the obvious issue is not whether jurisdiction or even concurrent jurisdiction exists in the Court of Chancery, but rather whether subject matter jurisdiction lies at law in Superior Court.[10]

▮▮▮ "The Declaratory Judgment Act did not increase or enlarge the jurisdiction of any of the courts which were legislatively empowered to grant declaratory relief, nor did the Act change the jurisdictional relationship between the Superior Court and the Court of Chancery. *Suplee v. Eckert,* Del.Ch., 120 A.2d 718, 720 (1956)." *Heathergreen Commons Condominium Assoc., supra* at 642. *See also Spencer v. Smyrna Bd. of Educ.,* Del.Super., 547 A.2d 614, 615 (1988). "Jurisdiction under the Act hinges upon whether law or equity

---

**9.** All authorities cited to support both parties' arguments as to subject matter jurisdiction were Court of Chancery decisions.

**10.** The Court conducted its own research and found that there are literally no reported or unreported Superior Court decisions dealing extensively with the issue of the subject matter

jurisdiction of this Court in a declaratory judgment action dealing with clouds on title to easements, or indeed, with regard to any real property law issue. Interestingly, then, I *also* had to rely on Chancery Court decisions which defined Superior Court's jurisdiction in this area.

would independently have jurisdiction, without reference to the Act, if the subject matter of the controversy should develop to a latter stage." *Heathergreen, supra* at 642. Thus, Superior Court has jurisdiction in a declaratory judgment action only if it would otherwise have subject matter jurisdiction in the absence of the declaratory judgment action. *See Heathergreen, supra* at 642;[11] *Accord, Spencer, supra* at 615. Therefore, plaintiffs' underlying action must be one which would fall within the common law or statutory jurisdiction of this Court *if* the action advanced to a point where coercive relief was being sought. *Diebold, supra* at 591.

This is a dispute over an easement and its scope. An easement is not an estate in land, nor is it land itself. 25 Am. Jur.2d *Easements,* § 2 (1966). An easement is, however, property or an interest in land. *Id.* at § 2.

An action to establish an easement [or its scope] is one involving title to real estate for jurisdictional purposes. *Id.* at § 115. Normally actions to determine title to land are actions at law, and thus within this Court's jurisdiction. However, this issue must be determinable *within* a common law or statutorily authorized cause of action. The question thus becomes: Does any such cause of action available at law fit the facts and circumstances of this case?

As noted by Vice Chancellor Jacobs in *Heathergreen:*

> [W]here, as here, the controversy involves the scope of ownership rights in land, Superior Court would have jurisdiction only if the [plaintiffs] could maintain their [claim] within the framework of an ejectment or, possibly, a trespass action. Both actions would fall within the common law jurisdictional purview of the Superior Court. *Suplee v. Eckert, su-*

*pra,* 120 A.2d at 719–720 (ejectment); *Nebeker v. Berg,* Del.Ch. 115 A. 310 (1921) (trespass).[12]

*Id.,* at 643.

To these, the Court would add two other statutorily authorized actions where title can or must be determined: one to quiet title in adverse possession under 10 *Del.C.,* ch. 79; the other an action for a taking under the right of eminent domain pursuant to 10 *Del.C.,* ch. 61. The latter clearly has no application to the present claim.

As to ejectment, the plaintiff here could not bring such an action. "To maintain an ejectment action, the plaintiffs would have to be out of possession." *Heathergreen, supra* at 643. It is plain that, at least to the degree that any user of a right-of-way can be said to be in possession of it, the plaintiffs are in present possession and are in fact using it at this time. An action in ejectment is therefore not an available remedy.[13]

Another possible action would be one to quiet title obtained through adverse possession. However, there has been no such claim raised here; in fact, the defendant has not controverted the existence of the easement *per se.* This remedy therefore cannot serve as a vehicle for jurisdictional purposes.

As to trespass, in order to maintain such an action, the plaintiffs would have to show that the defendant made an unauthorized entry upon the right-of-way or otherwise physically interfered with their right to possession and use. *Heathergreen, supra* at 643. No such claim can be made here. First, the owner of the servient tenement in this case could not make an unauthorized entrance as there has been no claim of the right of exclusive use by the plaintiff.

---

11. Citing *Diebold, supra; Western Air Lines, Inc. v. Allegheny Airlines, Inc.,* Del.Ch., 313 A.2d 145, 149 (1973); *Jefferson Chemical Co. v. Mobay Chemical Co.,* Del.Ch., 253 A.2d 512, 514 (1969) as support for the proposition.

12. As to trespass, *see also* 2 Woolley on Delaware Prac., § 1498.

13. As a general rule, ejectment is not a proper remedy for the disturbance of an easement, which is a mere incorporeal right. Thus, ejectment will not lie to recover a right of way, which is not susceptible of delivery of possession by the sheriff. 25 Am.Jur.2d at 546, 549.

Since a private right of way carries with it by implication only such incidents as are necessary to its reasonable enjoyment, the grant of such a right, which is not exclusive in its terms, and which can be reasonably enjoyed without being exclusive, leaves in the grantor the right of user in common with the grantee. *Reiver et al. v. Voshell et al.*, Del.Ch., 158 A. 366, 368 (1932).

*Hackendorn v. Mahan*, Del.Ch., 8 A.2d 794, 797 (1939).

There is, likewise, a clear lack of any threat by the defendant to physically interfere with the plaintiffs' possession and/or use of the right-of-way; he has not threatened to block the access, tear up the road or put up a fence. Just as plaintiffs' right-of-way is an incorporeal right (*see* fn. 13), defendant's threat is one of an incorporeal interference (an injunctive suit in equity), not a physical one. Thus, trespass is not available to the plaintiff.

 Finally, it could conceivably be argued that quieting title to the easement is a necessary element of the plaintiffs' claim of present and threatened tortious interference with plaintiffs' contractual and business interests. However, plaintiff has presented no authorities to support this view nor has the Court, in its own independent search, uncovered any such authority allowing such action in connection with any tort other than trespass or nuisance (usually brought in equity).

The Court declines to make such a quantum leap and must, as a result, find that it lacks subject matter jurisdiction in this declaratory judgment action.

### CONCLUSION

 The Court of Chancery has jurisdiction where there is no adequate remedy at law available. *Chateau Apartments, Co. v. City of Wilmington*, Del. Supr., 391 A.2d 205 (1978); 10 *Del.C.*, § 342. As the plaintiffs here would have *no* remedy at law, let alone an adequate one, it follows *a fortiori* that this dispute lies within the jurisdiction of the Court of Chancery. *Accord, Heathergreen, supra.*

 Since I have determined that Superior Court lacks subject matter jurisdiction and that jurisdiction lies in another Court, I am faced with the decision whether to dismiss or transfer the action to the proper Court pursuant to 10 *Del.C.*, § 1904. Normally, the transfer under such conditions would be almost automatic because the enabling statute is remedial in nature and should be liberally applied to achieve its purpose and serve the ends of justice. *See e.g., Family Court v. Giles*, Del.Supr., 384 A.2d 623 (1978). However, under the particular circumstances of this case, and in light of the Court's decision that the action is inappropriate for declaratory judgment even if this Court had subject matter jurisdiction over it, transfer would appear to serve no useful purpose. The plaintiff can raise all his issues and defenses in the action already pending. in the Court of Chancery.

Therefore, for the foregoing reasons, the defendant's Motion To Dismiss is Granted.

It Is So ORDERED.