# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DOMINIC P. DISTEFANO, | ) | |
| DOMINIC V. DISTEFANO, and | ) | |
| DEBRA C. DISTEFANO, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. N20C-09-016 SPL |
| | ) | |
| WESTMINSTER CLUB, | ) | |
| | ) | |
| Defendant. | ) | |

## **ORDER**

This 27th day of February 2024, upon consideration of Plaintiffs', Dominic P. DiStefano,[1] Dominic V. DiStefano,[2] and Debra C. DiStefano (the "DiStefanos"), motion for summary judgment,[3] Defendant's, Westminster Club ("Westminster"), motion for summary judgment,[4] the parties' responses to the cross-motions,[5] and their November 29, 2023, arguments,[6] it appears to the Court that:

---

[1] Plaintiffs note that "Dominic Sr.['s] and Dominic Jr.['s] names are misspelled 'Dominic' instead of 'Domenic' in the original deed to the DiStefano property and throughout the pleadings in this case.  The spelling 'Dominic' is continued to be used herein to avoid confusion."  D.I. 39 ("Distefano Amend. Op. Brf.") at 6, n.3.  The Court continues to use this spelling here.

[2] *Id*.

[3] D.I. 39 ("DiStefano Mot." and "DiStefano Amend. Op. Brf.").

[4] D.I. 36 ("Westminster Mot." and "Westminster Op. Brf.").

[5] D.I. 45 ("Westminster Ans. Brf."); D.I. 46 ("DiStefano Ans. Brf.").

[6] D.I. 49.

## *Background*

1.      On September 1, 2020, the DiStefanos initiated this lawsuit against Westminster, seeking adverse possession of a part of Westminster's land where the DiStefanos had installed a concrete pad and shed in 2006, and a declaratory judgment asserting their rightful ownership of the land.[7]

2.      Westminster answered the complaint[8] and asserted a counterclaim seeking a declaratory judgment "declar[ing] that [the DiStefanos] may not use [an existing right of way] except for ingress and egress and not for parking."[9] Westminster asserts "that the Distefano property is subject to a 25-foot right of way ("ROW")"[10] "to allow unrestricted and unobstructed access to Westminster's swimming complex."[11]   Westminster contends "[p]arking on the ROW is not a reasonable use of it[,]"[12] and the DiStefanos "have been warned to not park cars in the ROW but ignore/refuse to do so."[13]

---

[7] D.I. 1 ("Compl.").

[8] D.I. 16 ("Ans.").

[9] *Id.* ¶ 49.

[10] *Id.* ¶ 36.

[11] *Id.* ¶ 42.

[12] *Id.* ¶ 41.

[13] *Id.* ¶ 40.

3. The DiStefanos answered Westminster's counterclaim, and asserted their own counterclaim seeking a declaratory judgment "to allow [the DiStefanos] reasonable use of the ROW [and] prohibit [Westminster] from utilizing the ROW for anything other than access."[14] The DiStefanos acknowledge that their "property is subject to a 25-foot [ROW]"[15] but argue that they "are permitted to use the ROW on their property so long as such use does not inhibit use of the ROW by [Westminster]."[16] The DiStefanos seek permission "to continue to use the ROW as historically used."[17]

4. On December 15, 2022, the parties settled Plaintiffs' claim for adverse possession, leaving only the declaratory judgment counterclaims to be litigated.[18] On September 22, 2023, the parties filed cross-motions for summary judgment.[19]

### *Standard of Review*

5. Under Superior Court Civil Rule 56 summary judgment will be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

---

[14] D.I. 19 ("DiStefano Ans.) at 8.

[15] *Id.* at 7, ¶ 6.

[16] *Id.* at 7, ¶ 7.

[17] *Id.* at 8, ¶9.

[18] D.I. 24; D.I. 51.

[19] D.I. 36 ("Westminster Mot."); D.I. 37 ("DiStefanos Mot.").

material fact and that the moving party is entitled to judgment as a matter of law."[20]

Summary judgment will not be granted if there is a material fact in dispute or if it "seems desirable to inquire thoroughly into [the facts] in order to clarify the application of the law to the circumstances."[21] The Court will not "indulge in speculation and conjecture; a motion for summary judgment is decided on the record presented and not on evidence potentially possible."[22] "Where cross motions for summary judgment are filed and neither party argues the existence of a genuine issue of material fact, the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with them."[23] The questions before the Court "are questions of law not of fact, and the parties by filing cross motions for summary judgement have in effect stipulated that the issues raised by the motions are ripe for a decision on the merits."[24]

---

[20] Super. Ct. Civ. R. 56(c).

[21] *Ebersole v. Lowengrub*, 180 A.2d 467, 468-69 (Del. 1962).

[22] *In re. Asbestos Litig.*, 509 A.2d 1116, 1118 (Del. Super. 1986), *aff'd sub. nom. Nicolet, Inc. v. Nutt*, 525 A.2d 146 (Del. 1987).

[23] *Radulski v. Liberty Mutual Fire Ins. Co.*, 2020 WL 8676027, at *4 (Del. Super. Ct. Oct. 28, 2020) (cleaned up).

[24] *Id.* (cleaned up).

## *Analysis*

### I. *The Superior Court's Jurisdiction To Address Easements On Real Property Through A Declaratory Judgment Action*

6. The parties have framed their dispute as a declaratory judgment action under Chapter 65 of Title 10 and contend that this Court is an appropriate forum for addressing, and resolving, their dispute.[25] "The decision to entertain an action for declaratory judgment is discretionary with a trial court, the only limitation being that the Court cannot abuse its discretion."[26] The Declaratory Judgment Act provides "prospective, i.e., forward-looking relief,"[27] but it neither broadens nor narrows the jurisdiction of this court; "[j]urisdiction under the Act hinges upon whether law or equity would independently have jurisdiction without reference to the Act."[28] And where the declaratory judgement is sought "*within* a common law or statutorily authorized cause of action," this Court maintains jurisdiction.[29] Within these

---

[25] D.I. 27, 28. While the agreement of the parties, in and of itself, does not suffice to confer jurisdiction upon this Court, the Court is satisfied that it may enter a declaratory judgment as to the scope of the easement in the context of the cross claims presented here.

[26] *Burris v. Cross*, 583 A.2d 1364, 1372 (Del. Super. 1990) (cleaned up).

[27] *Employers Insurance Co. of Wassau v. First State Orthopaedics, P.A.,* 2024 WL 74148, at *11 (Del. Jan 8, 2024) (internal citations omitted).

[28] *Burris,* 583 A.2d at 1376-77.

[29] *Id.* at 1377 (emphasis in original).

established parameters, an action to establish the scope of an easement may be within the Superior Court's jurisdiction.[30]

7. Here, Westminster contends the DiStefanos "physically interfered with their right to possession and use" of the easement and, thus, the scope of the easement may be assessed within a trespass action.[31] While this Court may be authorized to address the scope of the easement within a cause of action within this Court's jurisdiction, it is unlikely this declaratory judgement will fully resolve the parties' concerns.[32] In the absence of "mutual accommodation," the parties may need to seek to define the day-to-day contours of the easement; to the extent additional prospective judicial guidance may be required, the Court of Chancery instructs that "[a]n injunction is a proper way to prevent continued interference with an easement."[33]

---

[30] *Id.* at 1377.

[31] *C.f. Burris*, 583 A.2d at 1377. In *Burris,* this Court found it lacked subject matter jurisdiction because the scope of the easement was not "determinable *within* a common law or statutorily authorized cause of action." *Id.* at 1377-78.

[32] Rather than dismissing this action and directing the parties to start anew in the Court of Chancery, the Court exercises its discretion to address the parties claims within the scope of its jurisdiction. "It is clear that one action in Chancery could resolve all the issues, formulate the proper equitable and legal remedies and enforce those remedies if necessary." *Burris*, 583 A.2d at 1374. "In the case at hand, an action in Chancery appears to be not only 'equally serviceable,' but indeed superior to the remedy available in this Court." *Id.* at 1376.

[33] *Bogia v. Kleiner*, 2019 WL 3761647, at *9 (quoting *Rowe v. Everett*, 2001 WL 1019366, at *7 (Del. Ch. Aug 22, 2001)). Tellingly, all Delaware cases cited as authority on this issue by both parties emanate from Court of Chancery actions, and

## II. *A Retrospective Assessment of the Scope of the Easement Burdening 810 Cheltenham Road*

8. The DiStefanos' property is "[subject] to a twenty-five (25) foot right of way along the northeasterly property line leading from Cheltenham Road to lands of the Westminster Club."[34] "Deeds are specialized forms of contract, and like other contracts are not subject to construction unless the language is ambiguous."[35] By its terms, this easement permits access to and from the Westminster Club over the property presently owned by the DiStefanos. The parties do not contend, and the Court does not find, that further interpretation on this point is warranted.

---

no Superior Court authority is offered to support this Court prospectively defining the scope of an easement as it appears the parties' desire. This Court may define the scope of an easement in the context of a matter at law. *See, e.g., Pryde v. Delmarva Power & Light Co.,* 2009 WL 388942 (Del. Super. Ct. Feb. 17, 2009) (addressing the scope of an easement within the context of claims of negligence, timber trespass (a statutory claim), trespass, and conversion). The Court of Chancery may address the scope of an easement prospectively through an injunction or declaratory judgment. *See Bogia,* 2019 WL 3761647, at *9. This is so because "[j]urisdiction under the [Declaratory Judgment] Act hinges upon whether law or equity would independently have jurisdiction without reference to the Act." *Burris,* 583 A.2d at 1376-77.

[34] DiStefano Amend. Op. Brf., Ex. A. (2005 Deed, 1973 Deed). In the 1967 Deed transferring the parcel acquired by the DiStefanos from Eastern Developers of Delaware, Inc. to Independence Mall, Inc., provides for a perpetual "right of ingress over a 25 foot wide right of way, the Northeasterly side of which is the Northeasterly boundary line of the hereinabove described parcel." To the extent there is an argument that the easement only permits ingress, the Court finds that egress is a necessary complement to that right and, thus, the extant right-of-way easement contemplates ingress and egress.

[35] *Bogia*, 2019 WL 3761647, at *6.

9.     In its simplest terms, the issue before the Court is whether the DiStefanos may park vehicles on a portion of the easement.  And, the short answer is, yes.  The Delaware Supreme Court has explained:

> Generally speaking, the owners of a servient estate burdened by an easement in favor of a dominant estate may use the premises as they choose, but may not interfere with the proper and reasonable use by the owner of the dominant estate of their dominant right.  To determine what constitutes interference with one's reasonable use of an easement, the court must consider the purposes for which the easement was made, the nature and situation of the property subject to the easement and the manner in which it has been used and occupied.[36]

There is no record evidence that the DiStefanos' parking along one side of the easement with one side of the parked cars' tires off the paved roadway unreasonably interfered with Westminster's ingress or egress.  Westminster's hypothetical scenarios are not far-fetched, but there is no record evidence to support their occurrence, and this Court must not engage in speculation or conjecture when addressing a motion for summary judgment.  Of course, what is reasonable under varying circumstances may require a more nuanced prospective assessment beyond what this Court may provide in this declaratory judgment action.

10.     To resolve easement disputes, the Delaware Supreme Court has turned to the Restatement (Third) of Property: Servitudes § 4.9 for guidance.[37]   The

---

[36] *Vandeleigh Industries v. Storage Partners of Kirkwood, LLC*, 901 A.2d 91, 96-97 (Del. 2006) (cleaned up).

[37] *Id.* at 100-01.

Restatement suggests "maximizing the aggregate utility of the servitude and the servient estate . . . . Aggregate utility is generally produced by interpreting an easement to strike a balance that maximizes its utility in serving the purpose intended while minimizing the impact on the servient estate."[38] Further, "[t]he person who holds the land burdened by a servitude is entitled to make all uses of the land that are not prohibited by the servitude and that do not interfere unreasonably by the uses authorized by the easement."[39] The Restatement also addresses situations where the servient owner locates improvements upon an easement and instructs "[w]hether the improvement is an unreasonable interference with the servitude depends on the character of the improvement and the likelihood that it will make future development of the easement difficult. If the improvement is temporary and easily removed, it is generally not unreasonable."[40] The Court must not interpret a servitude in a manner that would deprive the easement owner "that to which it was legally entitled."[41]

11. Thus, the DiStefanos, owners of property burdened by an easement (the "servient estate"), may use the property as they choose, provided they do not unreasonably interfere with Westminster's, the easement holder (the "dominant

---

[38] *Id.* at 100 (quoting Restatement (Third) of Property: Servitudes § 4.9 cmt. b).

[39] *Id.* at 101 (quoting Restatement (Third) of Property: Servitudes § 4.9 cmt. c).

[40] *Id.*

[41] *Vandeleigh*, 901 A.2d at 98.

estate"), reasonable use.[42]   The Court will assess "the purposes for which the easement was made, the nature and situation of the property subject to the easement, and the manner in which the easement has been used and occupied"[43] in determining whether the DiStefanos' use of a portion of the easement for occasional parking constituted an unreasonable interference.

12.   Since 1964, Westminster, a seasonal swim and recreation club, has owned the property located at 808 Cheltenham Road, and has used the easement over the property at 810 Cheltenham Road for its members' ingress and egress.[44] During the summer months, club members use the easement every day of the week.[45] While the pool is closed from October through April, members use the easement on a more limited basis to access the tennis and basketball courts and occasional events on Westminster's grounds.[46]  Westminster also uses the easement during the "off season" for mail delivery, maintenance, and to perform repairs to club grounds and facilities.[47]

---

[42] *Id.* at 96.

[43] *Id.* at 96-97 (cleaned up).

[44] Westminster Op. Brf. at 3-4.

[45] *Id.*

[46] *Id.*

[47] *Id.*

13.     In 1973, Dominic V. ("Dominic Sr.") and Marie DiStefano purchased the property at 810 Cheltenham Road encumbered by the "25 foot right of way along the northeasterly property line leading from Cheltenham Road to lands of the Westminster Club."[48]  A 2005 deed conveyed the property to Dominic Sr., Domenic P. ("Dominic Jr.") and Debra C. DiStefano with the same express easement.[49]

14.     A 21 to 22-foot-wide portion of the 25-foot-wide easement is paved asphalt.[50]  The DiStefanos' driveway connects their two-car garage to the easement; the driveway can accommodate up to four parked cars.[51]  Neither the physical nature and situation of the easement nor the manner it has been used or occupied have changed in any material way throughout the DiStefanos' ownership of the property.[52]  Former Westminster Club President, Wayne Surles, testified that the nature of easement is the same as it had been in 1984.[53]

15.     Since acquiring the property at 810 Cheltenham Road in 1973, the DiStefanos have on occasion parked, and permitted their guests to park, on the

---

[48] Compl. at Exh. A ("Original Deed"); Westminster Mot. at 2.

[49] Compl. at Exh. B ("2005 Deed") at 2; Westminster Mot. at 4.

[50] DiStefano Mot. at Exh. E ("Dominic Jr. Dep.") at 24.

[51] Dominic Jr. Dep. at 15-17.

[52] DiStefano Mot. at Exh. K ("Surles Dep.") at 13-15; *see also*, DiStefano Mot. at Exh. G, Dominic Jr. October 11, 2004, Letter.

[53]  Surles Dep. at 13-14.

easement between their driveway and the Westminster parking lot.[54] Beginning in the 1980s, Dominic Sr. often parked his pickup truck on the right side of the easement.[55] When the DiStefanos have room to park their vehicles in their driveway, they do so.[56] And when the DiStefanos park vehicles on the easement, they position them in a single-file line with "a tire on the grass."[57] The easement is described as sufficiently wide to accommodate three cars of ordinary size.[58] No evidence has been offered to establish the width or length of the DiStefanos' occasional interference with the easement or that the DiStefano's occasional interference denied Westminster club members access to the club.

16. The DiStefanos maintain that while they are entitled to park on the easement, Westminster's use is limited to ingress and egress,[59] and Westminster does

_____

[54] *Id.*

[55] Surles Dep. at 14-15, 20-21; *see also* Dominic Jr. Dep. at 39.

[56] Dominic Jr. Dep at 18.

[57] Dominic Jr. Dep. at 38-39.

[58] Dominic Jr. Dep. at 40 ("[M]y math shows that you could have three other vehicles of standard width traverse up and down [the easement] simultaneously.") In fact, the proffered calculation allows for the width of a parked vehicle in addition to the three "traversing" vehicles. *Id.*

[59] Dominic Jr. Dep. at 9, 29; DiStefano Mot. at Exh. G, Dominic Jr. October 11, 2004, Letter ("This should be nothing new to the Board or the Club membership since my late mother would periodically keep everyone aware of this and personally install no-parking signs during swim meets herself over thirty odd years of membership").

not contend that it is entitled to park on the property.[60]  In the years following the DiStefanos' acquisition of the burdened property, Westminster recognized the DiStefanos' assertion of "parking privileges,"[61] and assisted in moving Westminster member or guest vehicles off of the easement at the DiStefanos' request.[62]  There does not appear to be a change in circumstances in the use of either property; rather, new ownership of the burdened property and new leadership of the Westminster Club appear to have prompted the parties to seek guidance from the Court, in the form of a declaratory judgment, as to the permitted use of the easement.  As discussed above, while the Court may speak to the general rights pertaining to this easement, it is not jurisdictionally positioned to define the parties' prospective rights more granularly.

17.    In 2004, Westminster informed the DiStefanos that their parking on the easement during the summer season interfered with ingress and egress of traffic.[63]

---

[60] Westminster Ans. Brf. at 7.

[61] Surles Dep. at 14-15.

[62] Dominic Jr. Dep at 29-30; *see also* DiStefano Mot. at Exh. G, September 7, 2004, Letter (If someone parks on the road and it is brought to the attention of the club employees on duty, attempts will be made to have the vehicles removed").

[63] Compl. at Exh. F at 1; *see* DiStefano Mot. at Exh. G, September 7, 2004, Letter ("In addition, the Club requires that no one else (including residents and guests of the DiStefano household) park on the road for the Pool Season, Memorial Day weekend through Labor Day weekend, inclusive.  This is necessary to provide room for emergency vehicle access and Club traffic"); *see also* Dominic Jr. Dep. at 41.

But there is no record evidence of any vehicles or pedestrians being denied access to the Westminster Club due to a DiStefano vehicle parked on a portion of the easement.[64] The Court does not minimize Westminster's theoretical concerns, but it finds no evidence of an actual interference with the easement (a denial of access to the Westminster grounds) caused by the DiStefanos' parking.[65]

18. The easement exists to provide access to the Club. The parties' submissions establish that the easement has been consistently used by Westminster for club access and occupied by the DiStefanos for parking vehicles. For over 30 years – from 1973 until 2004 – the record reveals the DiStefanos and Westminster engaged in a "spirit of mutual accommodation."[66] That spirit has waned. Nonetheless, no evidence exists that the DiStefanos' limited parking has unreasonably interfered with Westminster's use of the easement. Returning to the Restatement (Third) of Property: Servitudes § 4.9, specifically comment c, the Court likens the DiStefanos' parking on a side of the easement to the erection of a

---

[64] Dominic Jr. Dep. at 30 ("That right-of-way has never been obstructed either way. They have never obstructed it so I couldn't use it. And I've never obstructed it so they couldn't use it").

[65] *Id.*; Dominic Jr. Dep. at 42 ("There's never been a problem accessing that. There has never been a vehicle or a pedestrian that could not get to the pool property").

[66] *Bogia*, 2019 WL 3761647, at *9. "It is assumed that the owner of an easement and the possessor of the servient tenement are to exercise their respective rights and privileges in a spirt of mutual accommodation." *Id.* (quoting *Baer v. Dallas Theater Center*, 330 S.W. 2d 214, 219 (Tex. Civ. App. 1959)).

temporary improvement to the property.[67] Motor vehicles, by their very nature, are easily removed as circumstances require; periodic, high-volume pool events may reasonably require removal of these temporary obstructions so as not to interfere with Westminster's ingress and egress.

### *Conclusion*

In their motion for summary judgment, the DiStefanos ask this Court to declare:

> (1) that the Westminster Club's use of the right-of-way on the DiStefano's property is expressly limited to ingress and the Westminster Club is not permitted to park on the right-of-way on the DiStefano's property, and (2) that the DiStefanos are permitted to use the right-of-way on their property the way they have historically used it, including parking, so long as they do not interference with ingress and egress to Westminster Club[.][68]

Westminster, on the other hand, seeks a declaration that "parking on the [easement] by the [DiStefanos] interferes with the reasonable use and enjoyment of the [easement] by the [Westminster] Club and is not permitted according to the plain terms of the [easement]."[69] The record does not demonstrate that the DiStefanos' parking on a portion of the easement unreasonably interferes with Westminster's ingress and egress to the pool property and they may continue to park on the

---

[67] *See, Vandeleigh Industries,* 901 A.2d at 96-97 (quoting Restatement (Third) of Property: Servitudes § 4.9 cmt. c).

[68] DiStefano Amend. Op. Brf. at 18.

[69] Westminster Op. Brf. at 17.

easement, in the manner described, so long as they do not interfere with Westminster's ingress or egress. For the foregoing reasons, Plaintiffs' motion for summary judgment is **GRANTED**,[70] and Defendant's motion for summary judgment is **DENIED**.

To be sure, this Court's declaration does not provide the DiStefanos unlimited license to park as they wish on the easement. Rather, based on the undisputed facts presented to the Court, the DiStefanos' parking has not unreasonably interfered with Westminster's easement. Should the parties require additional, prospective, judicial guidance, that must be sought in another forum. In the meantime, the Court encourages the parties to engage in meaningful discussion in the spirit of mutual accommodation.

**IT IS SO ORDERED.**

Sean P. Lugg, Judge

---

[70] Westminster does not contend that it is permitted to use the easement for parking. Westminster Ans. Brf. at 7; *but see, Bogia*, 2019 WL 3761647, at *7. In *Bogia*, the Court of Chancery referenced secondary sources supporting the proposition that the owner of the dominant estate may have parking rights on an easement equivalent to those of the owner of land upon which the easement runs. *Id.* (quoting M.O. Regensteiner, *Right To Park Vehicles On Private Way,* 37 A.L.R. 2d 944 §2[b] (1954)). This proposition is not advanced by Westminster in this proceeding.