**DELMARVA POWER & LIGHT COMPA-NY, a Delaware corporation, Defendant Below, Appellant,**

v.

**Robert BURROWS, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted April 15, 1981.

Decided Aug. 19, 1981.

Mason E. Turner, Jr. (argued), of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for defendant-appellant.

Harold Schmittinger (argued) and William D. Fletcher, Jr., of Schmittinger & Rodriguez, P.A., Dover, for plaintiff-appellee.

Before HERRMANN, C.J., DUFFY and QUILLEN, JJ.

QUILLEN, Justice:

On March 19, 1972, Robert Burrows was assisting his neighbors, Katherine and Richard Hawkins, who were attempting to erect a television antenna on the roof of their rented house. Burrows was standing on the ground holding the antenna's base when its upper end touched Delmarva Power & Light Company's (Delmarva) uninsulated high voltage wires, one of which ran, according to Mr. Hawkins, over the eave of the house. Hawkins further testified that one could actually grab the wires while standing on the rooftop, that the pole supporting the wires was placed approximately two feet from the house, and that the wires would not be visible to one standing between his house and Burrows' trailer, Burrows' apparent location when the antenna touched the wires. Thus, the evidence clearly showed that a person moving on the rooftop, for whatever purpose (e. g., repair the roof, do chimney work, erect an antenna) was easily within touching distance of an uninsulated high voltage wire. In the case of Mr. Burrows, who was on the ground when the antenna touched the wire, a massive shock was received. As a result of the shock, Mr. Burrows suffers from brain damage. A Superior Court jury awarded Burrows $253,869.75 in his negligence suit against Delmarva, and Delmarva, asserting error in the trial, appeals.

I

Delmarva's first several contentions concern the Trial Judge's instructions on the

standard of conduct required of Delmarva. Delmarva claims the Trial Judge erred in stating its duty of care: (A) by instructing that it was under a duty to protect the public from the negligence of others and to protect against causes over which it had no control; (B) by describing the duty as "doing everything that gives reasonable promise of preserving life . . . regardless of difficulty or expense"; (C) by not instructing that its duty was only to protect against those things "probable" to happen, citing *Hercules Powder Co. v. DiSabatino*, Del. Supr., 188 A.2d 529, 534 (1963) for this latter contention; (D) by instructing that it had a duty to insulate the wires or provide warning signs regardless of the adequacy of the lines' location; (E) by failing to instruct that compliance with the National Electric Safety Code was evidence of due care; and (F) by failing to give a "no comparative negligence" instruction.

Delaware law measures duties owed in terms of reasonableness. One's duty is to act reasonably, as a reasonably prudent man (or entity) would. *Robelen Piano Co. v. DiFonzo*, Del.Supr., 169 A.2d 240, 244 (1961); *State v. Arnold*, Del. O. & T., 27 A.2d 81, 83 (1942); *McKinney v. Reardon*, Del.Super., 337 A.2d 514, 515 (1975). One breaches that duty by not protecting against an event that a reasonably prudent man would protect against. Stated differently, one's duty encompasses protecting against reasonably foreseeable events. *See State v. Clark*, Del.Supr., 20 A.2d 127, 129–30 (1941); *Cannon v. Delaware Electric Power Co.*, Del.Super., 24 A.2d 325 (1941).

Against this background, we examine the Trial Judge's general instruction on Delmarva's duty:

> "Now, ladies and gentlemen, an electric company is under a duty to safeguard the public against injury arising from use of its dangerous agency, whether damage arises from its negligence, negligence of others, or from causes over which it has no control, to extent of exercising reasonable care to correct or remove causes of danger if reasonably foreseeable and known to the power company; however,

an electric company is not an insurer and is not liable for injuries unless it is guilty of some wrongful act or omission.

> A power company must anticipate and guard against events which may be reasonably expected to occur, and its failure to do so is negligence, even though power companies may not anticipate the identical injury or incident that occurs.

> The degree of diligence which a distributor of electricity must observe in the distribution of electricity is a very high degree of care and due care which must be observed in distribution of electricity requires that everything that gives reasonable promise of preserving life must be done regardless of difficulty or expense."

### A.

■ The initial portions of this charge contain correct statements of the law: Delmarva's duty is stated to be to protect against *"reasonably* foreseeable" danger and "events which may be *reasonably* expected to occur" (emphasis added). Accordingly, we find no merit in Delmarva's claim that the Trial Judge erroneously placed it under a duty to safeguard against the negligence of others and against accidents beyond its control; the Trial Judge expressly limited such duties to "reasonably foreseeable and known" situations. *See also, DiSabatino*, 188 A.2d at 534, concerning the negligence of others.

### B.

■ The latter portion of the general charge warrants more detailed comment, however. As noted, Delmarva claims that requiring "everything that gives reasonable promise of preserving life . . . regardless of difficulty or expense" to be done imposes upon it responsibilities greatly in excess of traditional negligence standards. This portion of the charge apparently stems from *Cook v. Wilmington City Electric Co.*, Del. Super., 32 A. 643, 645 (1892), and *Johnson v. Delmarva Power & Light Co.*, Del.Super., 312 A.2d 634, 637–38 (1973). Viewed against our discussion of duties stated above, we recognize the argument that

modest conflict might exist between our discussion and the charge derived from the *Cook* and *Johnson* decisions. We note, however, that the *Cook* and *Johnson* portion of the charge in this case does not state a limitless duty. Only that which gives "*reasonable* promise of preserving life" (emphasis added) is required. And, when read in conjunction with the initial portions of the charge, the *Cook* and *Johnson* portion here does not depart from the negligence standard nor amount to error.

### C.

Turning now to Delmarva's claim that its duty extended only to protect against things "probable" to occur, we perceive a tension between our discussion of the concept of duty in negligence law and the language relied upon by Delmarva in *DiSabatino*—as well as a tension within *DiSabatino* itself. In one paragraph of *DiSabatino*, a duty is imposed to protect against "reasonably foreseeable" events, consistent with our discussion above, while in the preceding paragraph of that same opinion, relied upon by Delmarva, protection is required only against events foreseen as "probable" to happen. 188 A.2d at 534. As we view this apparent conflict between *DiSabatino's* descriptions of duty, a duty to protect only against events foreseen as probable to happen is something less than a duty to protect against events reasonably foreseeable, the latter, as we have noted, being the proper standard.

■ In negligence actions the question is whether the risk of particular consequences is "sufficiently great to lead a reasonable man . . . to anticipate them, and to guard against them." W. Prosser, The Law of Torts 145 (4th ed. 1971). While the social utility of the activity must be balanced against the risk, "the question is not one of mathematical probability alone" and "[a]s the gravity of the possible harm increases, the apparent likelihood of its occurrence need be correspondingly less." *Id.* at 147–48.

Accordingly, we must view the "probable to happen" language in *DiSabatino* as a slight departure from true negligence theory. In this case, the Trial Judge correctly did not instruct in terms of probability.

### D.

■ Later in the instructions, relating to Burrows' specific allegations of negligence, the Trial Judge stated:

"The second allegation is that the wires were not properly insulated and the plaintiff Robert Burrows alleges that the defendant Delmarva Power & Light Company was negligent when it failed to properly insulate its high voltage power lines which were in close proximity to residential rooftops when it was reasonably foreseeable that persons conducting reasonably foreseeable activities would come in contact with such wires where they were located.

The defendant Delmarva Power & Light Company owes a legal duty toward every person who is liable to come in contact with dangerously high voltage power lines to see that such lines are properly insulated so as to avoid any physical injury upon contact with them at a place where the person has a legal right to be, whether it is for business, pleasure or convenience.

If you find that the defendant failed to insulate these wires, that they were located in close proximity to a residential rooftop and that it was reasonably foreseeable to anticipate that persons would have come in contact with such wires at this location, then the defendant was negligent. If you further find that negligence was a proximate cause of the plaintiff's injuries and the accident in question and that the plaintiff was free from contributory negligence, your verdict should be for the plaintiff.

Plaintiff also alleges that the defendant failed to give proper warnings. Robert Burrows alleges that Delmarva Power & Light Company negligently erected and maintained high voltage uninsulated electrical power lines in close proximity to a residential roof. Given the inherent dangerous and lethal nature of such electrical

circuits, the plaintiff alleges that the defendant was negligent in failing to warn all persons who might be working around such wires of the latently dangerous nature of the wires when the defendant had a duty to do so. Therefore, if you find the defendant placed or maintained dangerous electrical power lines in an area where it would have been reasonably prudent to warn persons of the dangerous nature of such wiring and failed to do so, then the defendant was negligent."

Delmarva argues that the Trial Judge imposed upon it a duty to insulate or warn regardless of the adequacy of the lines' location. We cannot credit this contention. Concerning the duty to insulate, the Trial Judge stated Delmarva had a duty to protect individuals who could come into contact with the wires when "it was reasonably foreseeable to anticipate that persons would have come in contact with [them]." This is a far cry from Delmarva's assertion that its duty was stated to be to insulate all wires "regardless of the adequacy of their location and clearance"; again, the tempering concept of reasonable foreseeability is present.

Concerning the duty to warn, the Trial Judge imposed the duty only "where it would have been reasonably prudent to warn." Once again, the Trial Judge required only reasonableness, not, as Delmarva claims, exhaustiveness.

### E.

■ Delmarva next argues that the Trial Judge erroneously failed to instruct the jury that Delmarva's compliance with the National Electric Safety Code was, at least, evidence of due care after instructing that a violation of the Code was evidence of negligence. There was no contest with regard to the admissibility of pertinent Code provisions. We find no reversible error in Delmarva's contention, for, while the instruction could have been clearer, we read it as, at least implicitly, stating that compliance with the Code was some evidence of due care:

"In determining whether Delmarva Power & Light met its duty to exercise a high degree of care to insure the safety of persons, you may consider whether the defendant complied with the requirements of the National Safety Code."

### F.

■ Delmarva next claims the Trial Judge erroneously failed to give the jury a requested "no comparative negligence" instruction. The requested language essentially stated that the jury was not to compare the negligence of the parties nor apportion the claim on that basis and that any negligence by the plaintiff, no matter how slight, precluded any recovery. The Trial Judge's instructions actually given, however, clearly stated that if Burrows was contributorily negligent he could not recover. We do not believe the absence of instruction concerning the remainder of Delmarva's request amounted to prejudicial error in the circumstances of this case.

### II

Delmarva's remaining contentions relate to evidence pertaining to Burrows' loss of earnings resulting from the accident. The following facts are necessary for our discussion.

■ In 1969 and 1970 Burrows worked on the Delaware River, as a deckhand, in the Philadelphia area. From 1971 to 1979, with the possible exclusion of 1976 and 1977, in which years there was a factual dispute whether he received income, he worked off and on in Leipsic, Delaware, in his father's restaurant and as a crabber.

Francis Tannian, an economist, testifying for Burrows, projected that Burrows' past and future lost earnings amounted to approximately $260,000.00. Tannian obtained Burrows' total lost earnings by averaging Burrows' annual earnings for the three-year period preceding the accident, then, based on data concerning manufacturing workers, compared Burrows' actual earnings from 1972 to 1979 with his "projected" earnings based on the three-year average to

obtain Burrows' lost past earnings. A similar comparison, projected forward, produced Burrows' lost future earnings.

Initially, Delmarva argues that the inclusion of Burrows' income from 1969 and 1970, each year's total exceeding that received by Burrows in Leipsic in 1971, into Tannian's "base" improperly inflated the subsequent projections because there is no evidence that Burrows ever intended to return to work as a deckhand. For admissibility purposes, we find that Tannian's "base" was reasonable. It was derived from Burrows' recent actual employment history. Accordingly, we cannot agree with Delmarva that no reasonable basis existed for Tannian's projections.

 Delmarva next takes issue with Tannian's use of manufacturing workers' statistics in his comparisons, when Burrows worked only as a deckhand, restaurant worker, and crabber. Tannian testified, however, that Burrows' average annual income in his three-year "base" was comparable to manufacturing workers' incomes for the same time. This similarity, in this case, we think, is sufficient to make the calculations reasonable, even though a closer category might have existed. Our conclusion is strengthened by the record's disclosure that in 1979, Burrows attempted to hold a manufacturing-type job, but was released because of memory problems apparently caused by the electric shock.

Delmarva next attacks Tannian's figures as suspect because they are based on the false assumption that Burrows earned no income in 1976 and 1977. Tannian testified that his calculations were based on tax forms that he received, none of which were produced, nor introduced into evidence, for 1976 and 1977. Suffice it to say that Delmarva's counsel not only elicited from Tannian, before the jury, that his total sum would be reduced if Burrows worked those two years, but also produced testimony that Burrows did in fact work, to some extent, during that time. Tannian's calculations were reasonable in view of the tax forms in evidence, and the jury was made aware that the calculations were based on assumptions that were contested.

Delmarva's final attack relating to the economic projections concerns the rule in this State that the bite of taxation on future earnings is too speculative for the jury to consider when formulating an award. See *High v. State Highway Department*, Del.Supr., 307 A.2d 799, 804–05 (1973) and Delaware cases cited therein. Delmarva argues that this Court should adopt the language recently expressed in *Norfolk & Western Railway Co. v. Liepelt*, 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980), wherein the Supreme Court stated, as a matter of federal law, "[w]e . . . reject the notion that the introduction of evidence describing . . . after-tax earnings is too speculative or complex for a jury." 444 U.S. at 494, 100 S.Ct. at 758, 62 L.Ed.2d at 694.

According to plaintiff, however, and not contested by Delmarva in its briefs, Delmarva did not attempt to introduce at trial any specific evidence relative to the effect of taxation on Burrows' future earnings. In this absence of effort by Delmarva, providing no basis in the record for error, we, in our appellate role, decline to review anew established Delaware law.

The judgment of the Superior Court is affirmed.