# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

ROBERTA KOZAK-BIASOTTO,   )
            Plaintiff,      )
                     )
          v.         )   C.A. No.: N21C-10-234 SPL
                     )
CHERRINGTON SERVICE      )
CORPORATION, a Delaware    )
Corporation, MEI INDUSTRIES,  )
INC., a Delaware corporation, JAMES   )
R. MADDOX, JR, and JAMES R.   )
MADDOX, III,           )
           Defendants.     )

## MEMORANDUM OPINION

Submitted: March 19, 2024
Decided: June 4, 2024

*Upon Defendants', Maddox Enterprises, Inc. and James R. Maddox, III,
Motion for Summary Judgment.*
**DENIED.**

*Upon Defendants', Cherrington Service Corporation and James R. Maddox, Jr.,
Motion for Summary Judgment.*
**DENIED IN PART, GRANTED IN PART.**

*Upon Defendant's, Cherrington Service Corporation,
Motion for Summary Judgment on Counterclaim.*
**DENIED.**

Nicholas G. Kondraschow, Esquire, RHONDUNDA, WILLIAMS & KONDRASCHOW, Wilmington, Delaware, *for Plaintiff Roberta Kozak-Biasotto.*

Aaron E. Moore, Esquire and M. Claire McCudden, Esquire, MARSHALL DENNEHEY, P.C., Wilmington, Delaware, *for Defendants Cherrington Service Corp. and James R. Maddox, Jr.*

Theodore J. Segletes, III, Esquire, THE LAW OFFICES OF COBB & LOGULLO, Wilmington, Delaware, *for Defendants Maddox Enterprises, Inc., and James R. Maddox, III.*

**LUGG, Judge**

## I. INTRODUCTION

This case involves a dispute between a landowner and her community association to manage the flow of stormwater and their concomitant rights and responsibilities with respect to their efforts to do so. And, because the community association employed a contractor to perform work upon the landowner's property, they, too, are embroiled in the quarrel. As is often the case, when communication fails, or is never initiated, and investigation is half-hearted or non-existent, litigation ensues. Such is the case here.

Plaintiff, Roberta Kozak-Biasotto ("Kozak-Biasotto") purchased the residential property at 113 Haywood Road on June 6, 2003. There is no record evidence that she performed any noteworthy alterations to the home or the contours of the landscape surrounding her home. For over a decade she lived in the home on that property without issue. That changed in 2016.

Cherrington Services Corporation ("CSC") is the homeowner's association that manages Cherrington, a residential subdivision in Wilmington, Delaware. James R. Maddox, Jr. ("Maddox Jr.") has been a member of the CSC Board since 2017.[1] Maddox Enterprises, Inc. d/b/a J&M Industries ("MEI") is the construction company retained by CSC to perform work on Kozak-Biasotto's property.[2] James

---

[1] D.I. 79, Exh. B ("Maddox Jr. Aff") at ¶ 1.
[2] D.I. 79, Exh. D ("Gehring Aff.") at ¶ 3.

R. Maddox, III ("Maddox III") is the owner and operator of MEI and is Maddox, Jr.'s son; while related, Maddox Jr. and Maddox III have no business association as it pertains to this case.[3] Collectively, CSC, Maddox, Jr., MEI, and Maddox III, are the defendants named in Kozak-Biasotto's lawsuit.

In 2016, MEI, at the direction of CSC, entered upon Kozak-Biasotto's property to perform work to address stormwater drainage.[4] Maddox, Jr. believed CSC possessed the legal right to enter upon Kozak-Biasotto's property under an existing easement.[5] Following MEI's work on the property, three noteworthy storms dumped sufficient rain in north Wilmington to cause flooding and damage to Kozak-Biasotto's home and property.[6] Kozak-Biasotto contends that the defendants' entry upon, and alteration to, her property caused flooding which damaged her property.[7] The defendants disagree.

Discovery closed and the defendants have moved for summary judgment. Following a thorough review of the pleadings and consideration of the parties' oral arguments, the Court concludes that material questions of fact exist as to claims asserted by Kozak-Biasotto; thus, defendants' motions for summary judgment must

---

[3] Maddox Jr. Aff. at ¶ 2.

[4] D.I. 85, Exh. G ("CSC Ans. to Amend. Compl") at 16, ¶ 30.

[5] D.I. 85, Exh. H ("CSC Ans. to Interrogatories") at 9.

[6] D.I. 85, Exh. C ("Kozak-Biasotto Dep.") at 46, 58-61, 74, 140-141.

[7] Kozak-Biasotto Dep. at 80; D.I. 13, Amend. Compl. at ¶¶ 75-79.

be **DENIED**. The Court does not find evidence of bad faith by any party and summary judgement is **GRANTED** on Kozak-Biasotto's claim of "Bad Faith – Attorney's Fees."[8]

## II. FACTS AND PROCEDURAL HISTORY

Kozak-Biasotto purchased 113 Haywood Road, located within the Cherrington subdivision in Wilmington, Delaware, as her residence on June 6, 2003.[9] In 1972, the original owner of the Cherrington property created a subdivision plan that provided for a 20-foot wide drainage easement straddling the easterly property line of 113 Haywood Road; ten feet of the easement encumbered Kozak-Biasotto's property, and ten feet encumbered the adjacent easterly parcel.[10] A note on the plan also provides for a six-foot-wide easement on each side and rear lot line to be available for utility use, and a ten-foot-wide easement along the front lot line to be available for storm drainage use.[11]

The 1974 Declaration of Restrictions for Cherrington (the "Declaration") provides, in pertinent part,

---

[8] To the extent any party asserts a claim for attorney's fees, it is hereby denied. The parties have vigorously litigated on behalf of their respective clients. The Court does not find bad faith; rather, some conduct may best be attributed to ignorance on behalf of all parties.

[9] D.I. 85, Exh A ("NCC Parcel Search") at 1.

[10] D.I. 85, Exh. I ("1972 Subdivision Plan").

[11] *Id.*

3

Easements and Right-of-Way. Easements and rights-of-way are hereby expressly reserved over, under and along the side and rear boundary lines of each lot, being twelve (12) feet in width centered on such boundary lines of each lot so that the outmost six (6) feet of each lot along its side yard and rear yard boundary lines shall be subject to such reserved Easements and rights-of-way. The purpose thereof shall be for the construction and maintenance of storm water drainage systems as required by New Castle County or installed or authorized by Declarants…

\*\*\*

The owners and occupants of the lots shall at all times maintain and occupy their lots so as not to interfere with the purposes for which said easement and rights-of-way have been created and reserved.[12]

In 1987, the owner of the parcel at 113 Haywood Road constructed a single family dwelling on the property.[13] A driveway, drainage pipe, and berm were also constructed on the property.[14] The berm redirected the natural flow of stormwater.[15] The drainage pipe also conveyed water across the property; it "is not within any easement, does not run along any easement, and does not drain in any easement."[16]

After Kozak-Biasotto purchased the property in 2003, she did not perform any improvements to the existing landscape and its features.[17] The drainage pipe running

---

[12] D.I. 85, Exh. J ("1974 Decl. of Restrictions") at 7-8.

[13] NCC Parcel Search at 2.

[14] Gehring Aff. at ¶¶ 8, 13; D.I. 85, Ex. O ("CSC July 28, 2021, Letter").

[15] Gehring Aff. at ¶ 8.

[16] D.I. 85 ("Kozak-Biasotto's Ans. Brf.") at 8; CSC Ans. to Interrogatories ¶¶ 32-34.

[17] Kozak-Biasotto Dep. at 16, 17, 94.

4

underneath the driveway was already installed,[18] and there was a narrow, deep ditch between the berm and the pipe.[19]  Kozak-Biasotto never saw water running through the pipe.[20]  There is no record evidence of any flooding to the property, or concerns of CSC or others in the neighborhood about the landscape (condition and contours) of 113 Haywood Road, during the first 13 years of Kozak-Biasotto's ownership.

In 2016, as part of a neighborhood road improvement project, CSC contracted with MEI to perform work on the cul-de-sac in front of Kozak-Biasotto's property and on portions of Kozak-Biasotto's property believed to be part of an established easement.[21]  Maddox Jr. and Robert Gehring ("Gehring"), as part of CSC's Roads Committee, oversaw the road resurfacing.[22]  The portion of Haywood Circle adjacent to Kozak-Biasotto's front property line was covered with 2 to 6 inches of dirt, pine needles, and other natural debris[23] which needed to be cleared.[24]

---

[18] Kozak-Biasotto Dep. at 94.

[19] *Id.* at 95

[20] *Id.* at 81 - 82.

[21] D.I. 85, Exh. E ("MEI Work Proposal"); D.I. 85, Exh. W ("MEI Ans. to Interrogatories") at 6 ("At all times [MEI and Maddox III] believed they were working on property owned or controlled by [CSC]").

[22] Maddox Jr. Aff. at ¶ 1.

[23] *Id.* at ¶ 5.

[24] D.I. 79 ("CSC Op. Brf.") at 3 (citing Gehring Aff.).

Under the June 15, 2016 contract between CSC and MEI, MEI agreed to "correct the drainage in the cul-de-sac located at the end of Haywood Road."[25] Specifically, MEI would: (1) "pour a new concrete throat at the entrance to the drainage pipe;" (2) add soil stabilization fabric to the bottom of the drainage culvert; (3) reinstall rip-rap stones; (4) add an additional "12 tons of rip rap stones to replace the void of the landscape ties and [] fill in the low areas;" and (5) "excavate and remove the soil sediment sitting on the asphalt road."[26] No evidence has been offered that Kozak-Biasotto was informed of the proposed work before or after the execution of this contract.[27]

On July 25 and 26, 2016 MEI workers entered Kozak-Biasotto's property to perform work under the contract.[28] It does not appear that Kozak-Biasotto was present when work commenced;[29] she returned home to find workers modifying the berm in front of the pipe under her driveway, pouring a concrete throat to the pipe, and putting rip-rap stone down from Haywood Circle leading to the pipe.[30] MEI

---

[25] MEI Work Proposal.

[26] *Id.*

[27] CSC Ans. to Interrogatories at 9, ¶¶ 10-11.

[28] D.I. 85, Exh. F ("MEI Work Invoice"); MEI Ans. to Interrogatories at 7 ("Answering Defendant and his employee, Irving Mariaud worked on the job all day on both days").

[29] Kozak-Biasotto Dep. at 114.

[30] MEI Work Proposal.

6

trucks were present at that time, but Kozak-Biasotto does not believe she saw or spoke with Maddox III.[31] Kozak-Biasotto described the work as "a complete change in the topography of the front of [her] home."[32] Kozak-Biasotto confronted some of the individuals on her property, including Maddox Jr. who informed her that CSC had the right to perform the work on her property within the existing easement.[33] Maddox Jr. advised Kozak-Biasotto that "they were going to correct standing water sitting in the cul-de-sac and that they had a right to because they had an easement there" and that there was "a foot to 18 inches" of water sitting in the cul-de-sac where cars passed through.[34] Kozak-Biasotto accepted Maddox Jr.'s representations made on behalf of CSC as to CSC's rights under an existing easement;[35] she believed he was knowledgeable about the substance of his representations.[36]

In addition to the alterations to her property, Kozak-Biasotto stated that the road resurfacing added "bumps" in the roadway that directed the flow of stormwater toward the area where the berm was removed.[37] She asserted that, before the 2016

---

[31] Kozak-Biasotto Dep. at 41-42.

[32] *Id.* at 111.

[33] CSC Ans. to Interrogatories at ¶ 11; Kozak-Biasotto Dep. at 41.

[34] Kozak-Biasotto Dep. at 44.

[35] *Id.* at 117.

[36] *Id.* at 44, 117.

[37] *Id.* at 23, 96 - 97.

modifications to her property, the berm began at the westerly driveway and continued to the easterly driveway;[38] after the work was done, a 20-foot wide gap was cut into the berm. The removal of this part of the berm altered the flow of stormwater and impacted extant tree roots, causing flooding to 113 Haywood Road and significant damage to an adjacent tree.[39]

### *The 2017 Storm*

On July 23 and 24, 2017, a heavy storm dropped significant rainfall in northern Delaware, including the Cherrington subdivision.[40] Flooding from the storm damaged the interior and exterior of Kozak-Biasotto's home.[41] About six inches of water flooded into her first floor, damaging the floor, carpeting, and furniture.[42] Exterior stone steps to the residence sustained damage requiring nearly $3,000 in repairs.[43] Following the storm, Kozak-Biasotto "demanded that CSC do something to prevent stormwater drainage from flooding her home."[44] She provided CSC with a July 25, 2017 estimate from a company, Craft Not Dead, for work on

---

[38] *Id.* at 38 - 39.

[39] *Id.* at 39.

[40] D.I. 79, Exh. F; Kozak-Biasotto Dep. at 46.

[41] Amend. Compl. at ¶¶ 34-37.

[42] Kozak-Biasotto Dep. at 46, 140 - 141.

[43] *Id.* at 79.

[44] Maddox Jr. Aff. at ¶ 6.

8

her property including repair of a "broken drain pipe that was damaged from the force of the event."[45]  That contractor informed Kozak-Biasotto that the steps cracked from water pressure, rather than a faulty drainage pipe.[46]

In response to Kozak-Biasotto's complaints, Maddox Jr. and Gehring inspected the catch basin on Kozak-Biasotto's property.[47]  They discovered that an underground pipe receiving stormwater runoff from the roof of Kozak-Biasotto's house had exploded near the site of the flooding.[48]  Maddox Jr. told Kozak-Biasotto that the cause of the flooding was the 100-year storm, and that it would never happen again, but that they were going to install a gabion wall for her.[49]

On August 3, 2017, the president of CSC, Liz Oliver, wrote to Kozak-Biasotto to inform her that CSC would not compensate her for the flooding damage because a "thorough forensic investigation" by MEI revealed that the work done by MEI in 2016 did not cause the flooding.[50]  Oliver noted that "[t]here is no evidence that the catch basin was blocked and overflowed" and that "[t]he erosion of the unreinforced dirt embankment situated to the left of the steps, looking down from the driveway,

---

[45] *Id.* at ¶ 6; D.I. 79, Exh. H ("Craft Not Dead Proposal").

[46] Kozak-Biasotto Dep. at 55 – 56, 57.

[47] Maddox Jr. Aff. at ¶ 6.

[48] *Id.* at ¶ 7.

[49] Kozak-Biasotto Dep at 46.

[50] D.I. 79, Exh. I ("CSC August 3, 2017, Letter").

9

was caused by excessive water runoff from the driveway."[51]  Oliver stated that CSC "has moved the rip rap away from the drainage pipe in the basin, and will install a Gabion stone wall . . . 4 to 5 feet from the pipe end to catch and filter runoff for future one hundred year storms."[52]

Kozak-Biasotto accepted Maddox, Jr.'s, Gehring's, and Oliver's representations that the flooding to her property was not the result of the 2016 work commissioned by CSC.[53]  When asked when she concluded that Cherrington was responsible for the flooding, she stated "after the first flood and the second flood and the third flood and what they did to my property."[54]  She stated that, before the work was done, "[i]t was just a small little ditch before with a pipe there, and [she] never got any water in there . . . .  The berm was so high that I never got any water in there. It sat in the cul-de-sac at about a foot high.  That's why the concern came to Cherrington, and they came down and thought they were going to resolve the water in the cul-de-sac."[55]

---

[51] *Id.*

[52] *Id.*

[53] Kozak-Biasotto Dep. at 78.

[54] *Id.* at 80.

[55] *Id.* at 81.

*2020 & 2021 Storms*

In August 2020, another storm dropped a large amount of rainfall on the Cherrington subdivision,[56] and Kozak-Biasotto's home flooded again.[57] On November 10, 2020, CSC advised Kozak-Biasotto that it had been under the erroneous impression that CSC was responsible for maintaining the drainage basin, but that they now concluded that it was not their responsibility because the basin was outside of the drainage easement.[58] CSC disavowed responsibility for the 2020 flooding, stating that the flooding was caused by a "500-year" storm.[59] Then, following a September 2021 storm, Kozak-Biasotto's house flooded a third time.[60] Following the third storm, Kozak-Biasotto initiated this lawsuit in which she alleges, in addition to damage to her home and adjacent property, the floods aggravated her asthma.[61]

---

[56] *Id.* at 58-61.

[57] *Id.* at 59:2-14.

[58] D.I. 85, Exh. N ("CSC Nov. 10, 2020, Letter").

[59] *Id.* D.I. 79, Exh. K ("August 4, 2020, Delaware Online Article").

[60] Kozak-Biasotto Dep. at 74.

[61] *Id.* at 57 - 58, 88.

*Litigation Ensues*

On October 27, 2021, Kozak-Biasotto filed a complaint against CSC, Maddox, Jr., MEI, and Maddox III.[62] She seeks a declaratory judgment to resolve any dispute concerning the drainage easement over her property, as well as damages for harm to her property under claims of trespass and negligence, and bad faith attorney's fees.[63] On December 28, 2021, Kozak-Biasotto amended her complaint to add MEI and pled additional facts about her initial reliance on the representations made by the defendants.[64] In lieu of an answer, the defendants moved to dismiss the amended complaint contending that it was filed after the expiration of the applicable statute of limitations.[65] The Court denied defendants' motions to dismiss, finding that while the complaint was filed over three years after her claims accrued, Kozak-Biasotto pled "specific facts to support that the statute of limitations was tolled because [she] did not have inquiry notice until August of 2020, when the second flood occurred."[66] The defendants answered the complaint and CSC and Maddox Jr. asserted a counterclaim seeking a judgment declaring, among other things, an

---

[62] D.I. 1.

[63] *Id.* at 13-22.

[64] D.I. 13.

[65] D.I. 14, 15, 16, 17.

[66] D.I. 34; *Kozak-Biasotto v. Cherrington Service Corp.*, 2022 WL 2204850, at *2 (Del. Super. Ct. June 10, 2022).

12

easement in favor of CSC in the area of the extant drainage system at 113 Haywood Road.[67]

After learning of the lawsuit, David Langseder, a professional engineer and neighbor of Kozak-Biasotto wrote a letter to CSC.[68] Langseder represented that he lived across from Kozak-Biasotto before and after MEI's work and disputes Kozak-Biasotto's representation that CSC destroyed the berm.[69]

Gehring, a member of CSC's Board of Directors since 2017, offered an affidavit in support of CSC's Motion for Summary Judgment.[70] Gehring asserted that CSC has the legal right to perform the work conducted pursuant to its "Certificate of Incorporation, Bylaws, Declaration of Restrictions, Recorded Plans, New Castle County Code and the common law of Delaware."[71] He further stated that no berm has ever existed in the space where Kozak-Biasotto alleges, and that MEI Industries never destroyed a berm.[72] He took eight photographs in 2016 prior to Haywood Circle being cleared, prepped, and resurfaced, one photograph in July

---

[67] D.I. 37 ("CSC Ans. and Counterclaim") at 80-81.

[68] D.I. 79, Exh. G ("Langseder Aff.") Langseder avers that he is a professional engineer in Civil and Environmental Engineering with 13 years of experience in dam and flood control berms and maintenance.

[69] *Id.*

[70] Gehring Aff.

[71] *Id.* at ¶ 2.

[72] *Id.* at ¶ 4.

13

of 2017 after the storm, and another in November of 2020.[73] Gehring claims that "[t]he 100 year storms that caused damage to [Kozak-Biasotto's] home would have overflowed the catch basin, spilled over her driveway and damaged her home even if no work had been done to clear the debris and restore the catch basin."[74]

Kozak-Biasotto retained engineering expert, Michael Paraskewich Jr., PhD, PE, to perform an existing conditions/topographic survey, partial drainage analysis, and culvert analysis of 113 Haywood Road and surrounding area.[75] Dr. Paraskewich opined that the original design of the subdivision provided for stormwater runoff to be conveyed through the easterly easement running over Kozak-Biasotto's property and her neighbor to the east's property.[76] He stated:

> We could have modeled a scenario in which a berm, as purported was previously present that would have blocked the various storm events from coming into the subject property and subsequently flooding the house and downstream location of the pipe. A potential fix could possibly be to catch the drainage in the general vicinity up stream of the purported berm, convey it in the right of way or in the 10-foot easement and release it through the eastern easement. To verify this approach significant design and construction efforts will have to be considered before we can definitively state this feasibility.[77]

---

[73] *Id.* at ¶ 5.

[74] *Id.* at ¶ 13.

[75] D.I. 79, Exh. L ("Paraskewich Rpt.").

[76] *Id.* at 1.

[77] *Id.*

14

Paraskewich concluded that the catch basin and pipe are not within any drainage easement.[78]

CSC retained engineering expert, Dwight Walters, PE, to assess the property.[79] Walters' conclusions are largely consistent with those of Paraskewich. He opined that the pipe would be over capacitated during an 8.22 year storm event or greater;[80] Paraskewich reached the same conclusion for 10-year storm events or greater. Walters found that the placement of the rip rap stone would not reduce the volume of water conveyed to the pipe, but would lessen soil erosion and filter debris from entering the pipe.[81] He also concluded that the pipe is not within any easement.[82] On December 19, 2023, Walters provided a supplemental report with a professional opinion that "even if no maintenance was performed to remove any of the "elevated debris" from Haywood Road . . . the maximum capacity of the existing 15-inch stormdrain pipe would still be reached and surpassed during storm events of approximately 8.22 years or greater."[83]

---

[78] *Id.*

[79] D.I. 79, Exh. M ("Walters Rpt. Sept. 26, 2023").

[80] *Id.*

[81] *Id.*

[82] *Id.*

[83] D.I. 79, Exh. N ("Walters Rpt. Dec. 26, 2023") at 2.

## III. STANDARD OF REVIEW

Under Superior Court Civil Rule 56, summary judgment will be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[84] On a motion for summary judgment, this Court "(1) construes the record in the light most favorable to the non-moving party; (ii) detects, but does not decide, genuine issues of material fact; and (iii) denies the motion if a material fact is in dispute."[85] Summary judgment will not be granted if there is a material fact in dispute or if it "seems desirable to inquire thoroughly into [the facts] in order to clarify the application of the law to the circumstances."[86] The Court will not "indulge in speculation and conjecture; a motion for summary judgment is decided on the record presented and not on evidence potentially possible."[87] This Court has stated:

> Although summary judgment is encouraged, when possible, there is no right to summary judgment. The Court may deny summary judgment if the Court is not reasonably certain whether there is a triable fact issue. The Court may also deny summary judgment if the Court concludes a

---

[84] Super. Ct. Civ. R. 56(c).

[85] *U.S. Dominion, Inc. v. Fox News Network, LLC*, 2023 WL 2730569, at *17 (Del. Super. Ct. Mar. 31, 2023) (quoting *CVR Refin., LP v. XL Specialty Ins. Co.,* 2021 WL 5492671, at *8 (Del. Super. Ct. Nov. 23, 2021) (cleaned up)).

[86] *Ebersole v. Lowengrub*, 180 A.2d 467, 468-69 (Del. 1962).

[87] *In re. Asbestos Litig.*, 509 A.2d 1116, 1118 (Del. Super. 1986), *aff'd sub. nom. Nicolet, Inc. v. Nutt*, 525 A.2d 146 (Del. 1987).

more thorough inquiry into, or development of, the facts would clarify the law or its application.[88]

It is against this backdrop that the Court decides the pending motions.

## IV. ARGUMENT

MEI and Maddox III moved for summary judgment, alleging that Kozak-Biasotto's claims are barred by the applicable statute of limitations,[89] and that she fails to offer the requisite expert opinion to establish her *prima facie* case.[90] CSC and Maddox Jr. joined MEI and Maddox III,[91] and, in addition to the arguments raised by MEI and Maddox III, seek summary judgment on Kozak-Biasotto's claim for declaratory judgment, argue that Kozak-Biasotto's claims for trespass and negligence are unsupported by the record, and request an award of attorney's fees.[92] CSC and Maddox Jr. also filed a separate motion for summary judgment on its counterclaim seeking a declaratory judgment.[93] Kozak-Biasotto responded,[94] and the Court heard argument on the motions.[95]

---

[88] *U.S. Dominion, Inc.*, 2023 WL 2730569, at *18 (cleaned up).

[89] 10 *Del. C.* § 8106.

[90] D.I. 78.

[91] D.I. 79.

[92] *Id.*

[93] D.I. 80.

[94] D.I. 85, 86, 87.

[95] D.I. 91.

## A. *Statute of Limitations*

Defendants argue that Kozak-Biasotto's claims accrued on July 26, 2016 and that, because she failed to file her complaint within the three year period provided by 10 *Del. C.* § 8106, summary judgment is warranted.[96] While this argument mirrors that presented by the defendants in their motions to dismiss, they argue that discovery has disproven the allegations upon which the Court then relied.[97] Kozak-Biasotto contends that the Court has already decided this issue in Plaintiff's favor and "the Defendants add nothing to change that."[98] While this case has more fully developed, material factual disputes remain.

As an initial matter, the Court is not bound by its earlier ruling on defendants' motions to dismiss and may consider facts developed during discovery when assessing the application of a statute of limitation in a motion for summary judgment.[99] "To determine if an exception tolls the statute of limitations, the Court conducts a three part test: first, the Court decides when a cause of action accrued; second, the Court must assess whether the statute of limitations has been tolled, and

---

[96] MEI Op. Brf. at 10, ¶ 25; CSC Op. Brf. at 18-19.

[97] MEI Op. Brf. at ¶¶ 21-22; CSC Op. Brf. at 20.

[98] Kozak-Biasotto Ans. Brf. at 26.

[99] *See, e.g., Vaughn v. Jackson,* 2016 WL 1427718 (Del. Super. Ct. Apr. 7, 2016).

18

third, the Court must determine when the plaintiff was on inquiry notice of the cause of action."[100]

In the Order denying defendants' motions to dismiss, this Court held that:

> [T[he causes of action in Plaintiff's complaint are governed by 10 *Del. C.* § 8106, which requires that a plaintiff bring an action to recover damages within three years of the accruing of the cause of action. The statute of limitations will begin to accrue at the moment of the wrongful act and not when the effects of the act are felt, even if the plaintiff is ignorant of the cause of action. A "wrongful act" is a general concept which varies depending upon the nature of the claims at issue. Generally a cause of action for negligence accrues at the time of the alleged injury.[101]

While a more fulsome record has been developed, section 8106 of Title 10 applies with equal force here. Kozak-Biasotto's cause of action accrued on July 26, 2016, when defendants entered upon and altered Kozak-Biasotto's property.[102] Absent an exception allowing for the tolling of the applicable statute of limitations, Kozak-Biasotto's complaint must have been filed by July 26, 2019.[103] Of course, she did not file her complaint until October 27, 2021.[104] A factual dispute remains as to whether the statute of limitations tolled.

---

[100] *Crest Condominium Association v. Royal Plus, Inc.*, 2017 WL 6205779 (Del. Super. Ct. Dec. 7, 2017).

[101] *Kozak-Biasotto*, 2022 WL 2204850, at *2 (cleaned up).

[102] *Id.*

[103] 10 *Del. C.* § 8106.

[104] D.I. 1.

The Court summarized those tolling circumstances as they apply to this case

in its Order on the motions to dismiss:

> [U]nder Delaware law, the statute of limitations may be tolled when no observable or objective factors put a party on notice of an injury, and plaintiff must show that they were blamelessly ignorant of the act or omission and the injury. "Inquiry notice" means the discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to discovery of such facts. Blameless ignorance can be established by showing justifiable reliance on a professional or expert whom [the plaintiff] had no ostensible reason to suspect of deception. The party asserting the application of a tolling doctrine bears the burden of pleading specific facts to demonstrate that the statute of limitations is, in fact, tolled.
>
> To evaluate a plaintiff's objective awareness of the facts giving rise to the injury, the Court examines whether there are "red flags" that clearly and unmistakably would have led a prudent person of ordinary intelligence to inquire further and by determining if plaintiff gained possession of facts sufficient to make him suspicious, or that ought to make him suspicious.[105]

Applying these principles to the facts alleged in Kozak-Biasotto's amended

complaint, the Court found:

> Viewing the evidence in the light most favorable to the Plaintiff, the Court finds that the Plaintiff pleads specific facts to support that the statute of limitations was tolled because Plaintiff did not have inquiry notice until August of 2020, when the second flood occurred. Plaintiff adequately pleads that she relied on statements and representations made by Defendants that would reasonably delay notice of her injury. Likewise, a layperson would not have reasonable knowledge of the nature of the work performed by the Defendants on the drainage basin, pipe, and berm, especially when the Defendants unilaterally performed the work, without Plaintiff's permission. Also, it is not unreasonable

---

[105] *Kozak-Biasotto*, 2022 WL 2204850 at *2 (internal citations omitted) (cleaned up).

for the Plaintiff to have believed that the flooding in 2017 was an isolated incident caused by an unusual storm and the Defendants' representations that followed, including a forensic investigation by the Defendants which concluded that the drainage basin operated as anticipated.

Moreover, after the August 2020 incident, the Defendants appear to disavow any responsibility for the drainage pipe and basin on the Property because it was discovered that the easement was in a different location. Similarly, Plaintiff has adequately plead facts that she was blamelessly ignorant as her reliance on the Defendants' representations is reasonable because Defendants are construction professionals. Thus, the Plaintiff's complaint is timely.[106]

With discovery complete, the Court now assesses whether facts continue to support these tolling provisions or, more accurately, whether there is any factual dispute as to the application of a tolling provision. To survive summary judgment, the record must present a factual question as to whether one or more of the tolling doctrines applies to Kozak-Biasotto's claim.[107] "Under the time of discovery exception, the legal limitations period would not run against [Kozak-Biasotto] until [she] had reason to know of the trespass [] if the injury was "inherently unknowable" and [she was] "blamelessly ignorant."[108] "For an injury to be inherently

---

[106] *Id.*

[107] *Acierno v. Goldstein*, 2005 WL 3111993, at *5 (Del. Ch. Nov. 16, 2005).

[108] *Id.* at *6.

21

unknowable, there must have been no observable or objective factors to put a party on notice of injury."[109]

Kozak-Biasotto's claims accrued on July 26, 2016. "Trespass is a strict liability offense, the elements of which are entry onto real property without the permission of the owner."[110] Thus, Kozak-Biasotto's trespass claims accrued when defendants left her property after completing the drainage work. "To prevail in a claim for negligence, a plaintiff must establish that: 1) the defendant owed the plaintiff a duty of care; 2) the defendant breached that duty; 3) the plaintiff was injured; and 4) the defendant's breach was the proximate cause of the plaintiff's injury."[111] Kozak-Biasotto alleges that defendants breached their duty of care to her when they entered and damaged her property.

Facts continue to support the tolling of the statute of limitations for each of Kozak-Biasotto's claims for the same reasons the Court found in its Order on the defendants' motions to dismiss. Kozak-Biasotto testified that she was not informed of the work to be done on her property and was never asked to provide her consent. Defendants admitted as much. She also stated that she trusted and relied on CSC and Maddox Jr.'s representations. Defendants represented that the reason for the

---

[109] *Id.* (cleaned up).

[110] *Beckrich Hold., LLC v. Bishop*, 2005 WL 1413305, at *9 (Del. Ch. June 9, 2005).

[111] *Campbell v. DiSabatino*, 947 A.2d 1116, 1117 (Del. 2008).

22

2017 flooding was a 100-year storm, and that their drainage system had worked as intended. That provided a reasonable alternative cause of the flooding that allowed Kozak-Biasotto to believe that the drainage system worked despite the flood damage.[112]

Kozak-Biasotto contends that she did not have inquiry notice until November of 2020 when CSC disavowed responsibility and asserted its legal right to enter and work upon her property.[113] CSC initially claimed responsibility for the maintenance and repair of the drainage system until November 2020, when they determined the drainage system was outside of their easement.[114] Kozak-Biasotto's reliance on CSC and Maddox, Jr.'s representations was not unreasonable.

A material question of fact concerning when the cause of action was discovered, for purposes of applying the tolling provision, exists. Applying a reasonable person standard and viewing the facts in a light most favorable to Kozak-Biasotto, a dispute remains as to whether Kozak-Biasotto, in the exercise of due diligence, should have ignored Maddox, Jr.'s 2017 representations and immediately attributed the flooding of her home to MEI's 2016 work. The determination of

---

[112] *See Armstrong v. Council of Devon*, 2018 WL 1448093 (Del. Super. Ct. Mar. 23, 2018).

[113] Kozak-Biasotto Ans. Brf. at 30-31.

[114] CSC Nov. 10, 2020, Letter.

whether Kozak-Biasotto should have been on notice to investigate the cause of the flooding prior to 2020 must be left to the trier of fact.

### B. Expert Opinion

Defendants assert that Kozak-Biasotto fails to offer necessary expert testimony to establish the defendant's work caused her damages.[115]   MEI and Maddox, III, assert, "[t]o prevail in a case like this, Plaintiff must show that defendants created an artificial condition that altered or increased the flow of surface waters onto her property, AND that the altered flow caused material injury."[116] They contend, "[h]ere, Plaintiff failed to secure expert opinions identifying any alteration in the flow of surface waters on and across Plaintiff's property that would give rise to any damages thereon.[117]

Plaintiff's engineering expert, Michael Paraskewich Jr., PHD, PE, authored a report after performing an existing conditions/topographic survey, partial drainage analysis, and culvert analysis of 113 Haywood Road and surrounding area.[118]  Dr. Paraskewich concluded that the original design intent of the subdivision was to allow stormwater runoff to be conveyed through the easterly easement shared between

---

[115] MEI Op. Brf. at ¶ 27.

[116] *Id.*

[117] *Id.* at ¶ 28.

[118] Paraskewich Rpt.

24

Kozak-Biasotto's property and her neighbor to the east's property prior to the roads or houses being constructed.[119] He stated:

> We could have modeled a scenario in which a berm, as purported, was previously present that would have blocked the various storm events from coming into the subject property and subsequently flooding the house and downstream location of the pipe. A potential fix could possibly be to catch the drainage in the general vicinity up stream of the purported berm, convey it in the right of way or in the 10-foot easement and release it through the eastern easement. To verify this approach significant design and construction efforts will have to be considered before we can definitively state this feasibility.[120]

Dr. Paraskewich found that the Pipe is not within any drainage easement.[121]

CSC's engineering expert, Dwight Walters, PE generally agreed with Dr. Paraskewich's findings.[122] Walters concluded that the pipe would be over capacitated during an 8.22 year storm event or greater, while Dr. Paraskewich concluded the pipe was incapable of handling 10-year storm events or greater.[123] Walters stated that the placement of the rip rap stone would not reduce the volume of water conveyed to the pipe, but would lessen soil erosion and filter debris from

---

[119] *Id.* at 1.

[120] *Id.*

[121] *Id.*

[122] Walters Rpt. Sept. 26, 2023

[123] *Id.*

entering the pipe.[124]  He also concluded that the pipe is not within any easement.[125]

Walters later supplemented his opinion, noting that "even if no maintenance was performed to remove any of the 'elevated debris' from Haywood Road . . . the maximum capacity of the existing 15-inch stormdrain pipe would still be reached and surpassed during storm events of approximately 8.22 years or greater."[126]  Thus, there is no dispute that the water management system on Kozak-Biasotto's property could not handle heavy storms on its own.  But questions remain as to whether the defendants altered or removed other landscape features that mitigated the effects of heavy rain on that pipe and Kozak-Biasotto's property.

There is no requirement for expert testimony to establish Kozak-Biasotto's claims.  Rather, expert opinions are required to prove any element of a claim which is beyond common knowledge.  "While it is the jury's role to determine issues of negligence, Delaware Courts have granted summary judgment where the plaintiff has failed to produce an expert opinion when issues involving the standard of care, defects or proximate cause relate to matters outside the knowledge of the jury."[127]

---

[124] *Id.*

[125] *Id.*

[126] Walters Rpt. Dec. 26, 2023.

[127] *Bond v. Wilson*, 2015 WL 1242828, at *2 (Del. Super. Mar. 16, 2015), *aff'd*, 125 A.3d 676 (Del. 2015).

Where matters are "within the common knowledge of laymen,"[128] expert testimony is not required.

Here, Kozak-Biasotto does not simply point to her injury and allege that the Defendants are responsible because they altered the natural water flow in her neighborhood. Rather, she contends, "[i]t was negligent for Defendants to destroy a berm that was blocking the stormwater, particularly while not providing for the adequate drainage of that stormwater. It was not only reasonably foreseeable that the stormwater would drain on Ms. Kozak-Biasotto's property – that was Defendants' intent."[129] The defendants admit that they commissioned and performed work to correct standing water in the cul-de-sac by directing it to, and ultimately, through the pipe on Kozak-Biasotto's Property. There does not appear to be a dispute that the work succeeded in that goal. To the extent this fact is disputed, its resolution must be left to the factfinder.

On many points, Dr. Paraskewich and Walters are largely in agreement. Of course, an expert may not testify at trial beyond the scope of the expert report.[130] But here, the experts establish that some work was done to Kozak-Biasotto's property in a location not subject to an easement which impacted the flow of water

---

[128] *Campbell v. DiSabatino*, 947 A.2d 1116, 1118 (Del. 2008).

[129] Amend. Compl. ¶ 99.

[130] *Sammons v. Doctors for Emergency Services, P.A.*, 913 A.2d 519, 523 (Del. Dec. 4, 2006).

directed to an extant pipe on Kozak-Biasotto's property. And the experts conclude that the pipe was inadequate for heavy rainwater events and not the best solution for managing downstream rainwater in a residential neighborhood. It appears that an open swale within the existing easement is the best downstream water management system.[131] The proffered experts adequately inform on technical issues such that a lay-jury may assess the defendants' conduct within the contours of Kozak-Biasotto's claims. A material fact remains as to whether defendants work is the proximate cause of the damages alleged by Kozak-Biasotto and this assessment, under the facts presented here, may be performed by a layperson with the assistance of the parties' proffered experts.

### C. Trespass

To prove a trespass to land claim, Kozak-Biasotto must show "1) that the claimant has lawful possession of the land; 2) that the opposing party entered the claimant's land without consent or privilege; and 3) damages."[132] "Any unlawful entry upon another's land constitutes a trespass, and the law implies damages for

---

[131] CSC July 28, 2021, Letter ("CSC has been informed that Storm water run-off is best managed by an open swale"); Walters Rpt. Sept. 26, 2023, at 3 ("Regrade the yard area ... to provide a conveyance swale. This would allow the stormwater from larger storm events to safely be conveyed").

[132] *Dayton v. Collison*, 2020 WL 3412701, at *7 (Del. Super. Ct. Jun. 22, 2020) (citing *Williams v. Manning*, 2009 WL 960670, at *8 (Del. Super. Mar. 13, 2009)).

such a trespass, but the amount depends upon the damage actually done."[133]  A

material factual dispute exists as to the defendant's trespass on Kozak-Biasotto's

property, thus this claim survives summary judgment.

Kozak-Biasotto owned and resided at 113 Haywood Road when the work was

performed.[134]  When Kozak-Biasotto returned home in late July, 2016, she saw the

defendants performing work on her property.[135]  Maddox Jr. advised that the work

was being done on behalf of CSC to correct standing water in the neighborhood,[136]

and the parties introduced the contract in which CSC ordered the work to be done

by MEI.[137]  Indeed, CSC and Maddox Jr.'s answers to interrogatories state that they

neither requested nor obtained Kozak-Biasotto's consent to perform the work on her

property.[138]  And, all now agree that the work performed was done on an area of

Kozak-Biasotto's property outside of the established easement.[139]

There is a genuine dispute as to whether the work performed by the defendants

altered the flow of stormwater across the property and whether it caused the flooding

---

[133] *O'Bier v. JBS Const., LLC*, 2012 WL 1495330 (Del. Super. Ct. Apr. 20, 2012) (citing *Cochran v. City of Wilmington*, 77 A.963 (Del. Super. Ct. 1909)).

[134] NCC Parcel Search.

[135] CSC Ans. to Interrogatories at ¶ 11; Kozak-Biasotto Dep. at 41.

[136] Kozak-Biasotto Dep. at 44.

[137] MEI Work Proposal.

[138] CSC Ans. to Interrogatories at 9, ¶¶ 10-11.

[139] CSC Nov. 10, 2020, Letter; Paraskewich Rpt.

damage. Alteration of the flow of surface water may support liability on a trespass claim.[140] The right of CSC or Maddox to perform the work is also disputed. CSC in their November 10, 2020, letter disavowed further responsibility for maintenance of the drainage system because "the drainage basin and pipe are not situated on lands owned by the CSC," nor situated "within the boundaries of the NCC approved drainage Easement."[141] For these reasons, a material factual dispute exists,

### D. Negligence

"To prevail in a claim for negligence, a plaintiff must establish that: 1) the defendant owed the plaintiff a duty of care; 2) the defendant breached that duty; 3) the plaintiff was injured; and 4) the defendant's breach was the proximate cause of the plaintiff's injury."[142] CSC and Maddox Jr. assert that Kozak-Biasotto cannot cite to any authority which imposes a duty on CSC and Maddox Jr. with regard to their removal of debris "impeding rightful drainage."[143] And they contend that there is no evidence of the work being the proximate cause of the flooding because defendants' expert establishes that the flooding would have occurred had the work not been performed.[144]

---

[140] *Alfieri v. State*, 1984 WL 478437, at *3 (Del. Ch. Aug. 8, 1984).

[141] CSC Nov. 10, 2020, Letter.

[142] *Campbell v. DiSabatino*, 947 A.2d 1116, 1117 (Del. 2008).

[143] *Id.*

[144] *Id.*

Kozak-Biasotto alleges that defendants owed, and breached, a duty to act as a reasonably prudent person to prevent reasonably foreseeable harm.[145] While CSC may have a right to alter the flow of water within a community, there is an associated duty to ensure the alterations do not negatively affect homeowners.[146] There is no evidence that the existing easement was unavailable to the defendants as they worked to remediate rainwater runoff and clear roads for repaving.

One has a duty to act as a reasonably prudent person would.[147] One also has a duty to protect against reasonably foreseeable events.[148] Defendants owe Kozak-Biasotto a duty of care – CSC as Plaintiff's homeowners association; Maddox Jr. as a member of CSC's board; MEI and Maddox III in performing land-altering work on Kozak-Biasotto's property.[149] A dispute clearly exists as to the extent of this duty and whether this duty was breached.

---

[145] Amend. Compl. ¶ 98; Kozak-Biasotto Ans. Brf. at 39 (citing *Delmarva Power & Light Co.*, 435 A.2d 716, 718 (Del. 1981)).

[146] *Murray v. Mason*, 244 A.3d 187, 194-195 (Del. Super. Ct. Dec. 16, 2020) ("Anyone who performs an affirmative act is under a duty to others to 'exercise the care of a reasonable man to protect them against an unreasonable risk of harm to them arising out of the act'") (citations omitted).

[147] *Delmarva Power & Light Co.*, 435 A.2d at 718.

[148] *Id.*

[149] *Adams v. Calverese Farms Maint. Corp., Inc.*, 2010 WL 3944961 (Del. Ch. Sept. 17, 2010); *Bromwich v. Hanby*, 2010 WL 8250796 (Del. Super. Ct. July 1, 2010).

Walters concluded, "[s]torm water run-off is best managed by an open swale. Pipes are not preferred because they can easily become blocked at the inlet, can become jammed internally, and may be inadequately sized to handle 100-year storms (or greater)."[150] Nonetheless, the record reveals that all of the July 2016 work focused on directing, and possibly redirecting, neighborhood water to a pipe woefully inadequate to safely manage large storm events.

To be sure, material factual disputes abound with respect to whether and how defendants breached their duty to Kozak-Biasotto. The record reveals that the 2016 work on Kozak-Biasotto's property commenced and concluded with little foresight. Neither CSC, MEI, or their principals, sought to inform themselves of their rights and responsibilities with respect to Kozak-Biasotto's property. And no defendant endeavored to notify Kozak-Biasotto of the work to be done, or to secure her permission to enter upon and alter her property. This ignorance was compounded by Maddox, Jr.'s representations of a right to act where no right appears to have existed.

And breaches of the duty of care owed to Kozak-Biasotto may be found in the work performed. A factual dispute exists as to whether the defendants destroyed a berm causing an increase in waterflow to and upon Kozak-Biasotto's property. And even assuming that the work merely "cleaned up" an extant system, no consideration

---

[150] CSC July 28, 2021, Letter.

was given to preparing the property to absorb neighborhood rainwater. Ultimately, it is for the factfinder to assess whether the alleged duty and breach thereof proximately caused damage to Kozak-Biasotto's property and home.

### E. Declaratory Judgment Action

Kozak-Biasotto and CSC seek a declaratory judgment under Chapter 65 of Title 10.[151] CSC has moved for summary judgment on both Kozak-Biasotto's claim (seeking a declaration of rights and responsibilities with respect to the existing easement) and its counterclaim (seeking to declare an easement exists in favor of CSC at the location of the extant drainage system).

"The decision to entertain an action for declaratory judgment is discretionary with a trial court, the only limitation being that the Court cannot abuse its discretion."[152] The Declaratory Judgment Act provides "prospective, i.e., forward-looking relief,"[153] but it neither broadens nor narrows the jurisdiction of this court; "[j]urisdiction under the Act hinges upon whether law or equity would independently have jurisdiction without reference to the Act."[154] And where the declaratory judgement is sought "*within* a common law or statutorily authorized

---

[151] *Id.* at ¶¶ 69-84; CSC Ans. and Counterclaim at 80.

[152] *Burris v. Cross*, 583 A.2d 1364, 1372 (Del. Super. 1990) (cleaned up).

[153] *Employers Insurance Co. of Wassau v. First State Orthopaedics, P.A.,* 2024 WL 74148, at *11 (Del. Jan 8, 2024) (internal citations omitted).

[154] *Burris,* 583 A.2d at 1376-77.

33

cause of action," this Court maintains jurisdiction.[155] Within these established parameters, an action to establish the scope of an easement may be within the Superior Court's jurisdiction.[156]

Here, the existence and scope of the easements burdening 113 Haywood Road are not in dispute. But CSC contends that Kozak-Biasotto unlawfully moved the easement,[157] and offers to "consent to this relocation of the drainage easement as long as the relocation is equivalent."[158] Of course, material facts exist as to whether the easement burdening 113 Haywood Road has been moved as CSC contends. The alleged unlawful easement existed on the property for nearly 40 years without complaint from CSC. And, a material factual dispute exists as to whether any owner of the burdened property, Kozak-Biasotto or her predecessors, sought to relieve neighborhood water through the disputed drainage system.

---

[155] *Id.* at 1377 (emphasis in original).

[156] *Id*.

[157] D.I. 80 at ¶ 8. ("By rendering the Record Easement on the easterly side of Lot 7 unusable and re-directing stormwater runoff to the westerly side of Lot 7, Kozak-Biasotto's predecessors in title changed the location of the stormwater drainage easement that encumbers Plaintiff's Property without CSC's consent. This they had no right to do.")

[158] *Id.* at ¶ 11

34

### F. Bad Faith – Attorney's Fees

The Delaware Supreme Court recently explained the circumstances under which attorney's fees may be awarded:

> Delaware law follows the American Rule, under which litigants are generally responsible for paying their own litigation costs. Courts recognize "limited equitable exceptions" to the American Rule, including one for a party's "bad faith" conduct throughout litigation. Although there is no all-encompassing definition of "bad faith" conduct, Delaware courts have granted attorneys' fees where a party "unnecessarily prolonged or delayed litigation, falsified records, or knowingly asserted frivolous claims." In Delaware, the "bad faith" exception only applies in "extraordinary circumstances." Its purpose is "to deter abusive litigation and protect the integrity of the judicial process."[159]

While the Court will not comment on the strength of any party's case, Kozak-Biasotto has asserted justiciable claims, and the respective defendants have mounted a vigorous defense. To the extent that certain things could, or should, have been investigated more thoroughly prior to 2016, all parties bear some responsibility for acting with curable ignorance. The record fails to reveal extraordinary facts or circumstances supporting bad faith by any part. Summary judgement is granted on Kozak-Biasotto's claim of "Bad Faith – Attorney's Fees."

---

[159] *Dematteis v. RiseDelaware*, 2024 WL 1590382, *5 (Del. Apr. 12, 2024).

## V. CONCLUSION

While summary judgment is encouraged when feasible, this case presents triable issues of material fact: Defendants' Motions for Summary Judgment on the issue of statute of limitations are **DENIED**; Defendants' Motions for Summary Judgment on the issue of expert opinion testimony are **DENIED**; CSC and Maddox, Jr.'s Motion for Summary Judgment on trespass and negligence is **DENIED**; CSC's Motion for Summary Judgment on its Declaratory Judgment counterclaim is **DENIED**; and Summary Judgment is **GRANTED** on Kozak-Biasotto's claim of "Bad Faith – Attorney's Fees."